31 A.3d 250

**Ellis Richard DOUGLAS, Jr.**

**v.**

**STATE of Maryland.**

**Lamont Curtis**

**v.**

**State of Maryland.**

**Nos. 146, 147, Sept. Term, 2010.**

Court of Appeals of Maryland.

Oct. 27, 2011.

158

Rennee M. Hutchins, Assigned Public Defender (Karinna M. Arroyo, Assigned Public Defender, University of Maryland School of Law, Baltimore, MD), on brief, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE,\*MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

These consolidated cases present us with our first opportunity to interpret Maryland Code (2001, 2008 Repl. Vol., 2010 Supp.), § 8–301 of the Criminal Procedure Article ("C.P."),[1] providing for Petitions for Writs of Actual Innocence based on

---

\* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Section 8–301 was amended in 2010. Because none of the amendments affect our analysis, we cite the current version of the statute. Section 8–310, "Petition for writ of actual innocence," provides:

(a) *Grounds.*—A person charged by indictment or criminal information with a crime triable in circuit court and convicted of that crime may, at any time, file a petition for writ of actual innocence in the circuit court for the county in which the conviction was imposed if the person claims that there is newly discovered evidence that:

(1) creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined; and

(2) could not have been discovered in time to move for a new trial under Maryland Rule 4–331.

(b) *Requirements.*—A petition filed under this section shall:

newly discovered evidence. Both Appellant Ellis Richard
Douglas, Jr. and Appellant Lamont Anthony Curtis were
serving their respective sentences when C.P. § 8–301 went
into effect on October 1, 2009. Both then filed *pro se* petitions
for writs of actual innocence with the Circuit Court for Balti-
more City. The Circuit Court denied both petitions without
holding a hearing. Appellants noted their respective appeals
to the Court of Special Appeals and, on our initiative, we
issued a writ of certiorari before argument in the Court of
Special Appeals.[2] We granted Appellants' Motion to Consoli-
date the separate appeals because the two present identical
questions, which are:

> I. Is an order denying a petition for writ of actual inno-
> cence without a hearing an automatically appealable order?
> II. Did [the trial court] erroneously deny [Douglas's and
> Curtis's] petitions for writ of actual innocence without hear-
> ings in violation of § 8–301 of the Criminal Procedure title
> of the Maryland Code?

---

> (1) be in writing;
> (2) state in detail the grounds on which the petition is based;
> (3) describe the newly discovered evidence;
> (4) contain or be accompanied by a request for hearing if a hearing
> is sought; and
> (5) distinguish the newly discovered evidence claimed in the peti-
> tion from any claims made in prior petitions.
>
> \* \* \*
>
> (e) *Hearing.*—(1) Except as provided in paragraph (2) of this subsec-
> tion, the court shall hold a hearing on a petition filed under this
> section if the petition satisfies the requirements of subsection (b) of
> this section and a hearing was requested.
> (2) The court may dismiss a petition without a hearing if the court
> finds that the petition fails to assert grounds on which relief may be
> granted.
> (f) *Ruling.*—(1) In ruling on a petition filed under this section, the
> court may set aside the verdict, resentence, grant a new trial, or
> correct the sentence, as the court considers appropriate.
> (2) The court shall state the reasons for its ruling on the record.
> (g) *Burden of proof.*—A petitioner in a proceeding under this section
> has the burden of proof.

2. Douglas actually filed an application for leave to appeal, but in June
2010, the Court of Special Appeals ordered that Douglas's filing be
treated like a notice of appeal from the Circuit Court's decision.

 For the reasons that follow, we hold that the denial of a petition for writ of actual innocence is an immediately appealable order, regardless of whether the trial court held a hearing before denying the petition. We also hold that C.P. § 8–301 imposes a burden of pleading, such that a petitioner is entitled to a hearing on the merits of the petition, provided the petition sufficiently pleads grounds for relief under the statute, includes a request for a hearing, and complies with the filing requirements of C.P. § 8–301(b). As a consequence of these holdings, we reverse the order denying Douglas's petition and affirm the order denying Curtis's petition. We remand Douglas's case for further proceedings not inconsistent with this opinion.

## I. Background

### A. *Appellant Douglas*

Douglas's underlying convictions—for attempted murder in the second degree, assault, and related handgun offenses—arose out of an altercation on January 26, 1990, between Douglas and several Baltimore City police officers outside a bar in Baltimore City. One police officer saw Douglas sorting through what appeared to be packages of heroin or cocaine, approached him, and asked Douglas to come speak with his partner. Douglas initially complied with the officer's request, but then turned and tried to run away.

When Douglas turned to flee, the officer noticed a .22 caliber handgun tucked into the small of Douglas's back. The officer successfully retrieved the weapon. A struggle quickly ensued as other officers arrived on the scene. Douglas then pulled a .380 caliber handgun from his front waistband and fired four shots. One bullet struck an officer in the upper thigh and three other bullets struck another officer: one hit just below the knee, one severed his police radio cord, and one lodged itself in his utility belt.[3] The officers recovered the second gun and ultimately restrained Douglas.

---

**3.** The third bullet was not recovered from the officer's utility belt until approximately two months after the incident, when the officer noticed

At trial, Douglas appeared *pro se* after he knowingly and voluntarily waived his right to an attorney and fired his public defender. Seven police officers involved in the altercation testified. Additionally, two ballistics experts, Joseph Reese and Joseph Kopera, testified regarding the ballistic evidence. Reese testified that he had examined the bullet removed from one officer's leg and positively identified it as being fired from the .380 caliber handgun taken from Douglas. Kopera testified that he examined the bullet recovered from the other officer's utility belt several months after the incident and positively identified it as having been fired from the same .380 caliber gun.

The jury convicted Douglas of five counts of attempted second degree murder, five counts of assault, five counts of using a handgun in the commission of a crime of violence, and two counts of unlawfully wearing, carrying, and transporting a handgun. The Court of Special Appeals, in an unreported per curiam opinion, affirmed Douglas's convictions. Douglas then filed two postconviction petitions, both of which were denied.

In 2009, Douglas filed *pro se* in the Circuit Court for Baltimore City the present petition for writ of actual innocence pursuant to then-newly enacted C.P. § 8–301. Douglas alleged that the trial court had committed several errors. He further alleged that there was new evidence regarding the officer-witnesses who testified at his trial. Specifically, he asserted:

> [O]n or about September of 1994, Accuser–Witness: Officer Graham Sylvester was involved in another police shooting case ... and ... this time, Officer Sylvester' fellows, police officers did not go along with Officer Sylvester' story and Officer Sylvester was forced to retire from the Baltimore City Police Department. [Also,] on or about March 22, 1996, Police Officer Brian Bacon, who was an accuser-

---

the bullet lodged in his belt as he prepared to return to duty after recovering from his injury. He immediately notified his supervisor and the bullet was collected and processed by forensic analyst Joseph Kopera.

witness against Douglas at the Circuit Court For Baltimore City, appeared in the United States District Court For The District of Maryland and was exposed as an perjurer . . . by changing his . . . testimony. [Finally,] on or about March 9, 2007, the Sunpaper's Newpaper' Reporter Jennifer McMenamin wrote an News Article "that exposed Joseph Kopera, Head of the Maryland State Police Firearm Unit, as an perjurer; . . . and he help to denied Douglas a Fair Jury Trial, with his perjurer' testimony. . . . [Sic].

The Circuit Court denied Douglas's petition without a hearing by Order dated November 5, 2009. The substance of the Order reads in full:

The court ha[s] reviewed all submissions and ha[s] considered all facts in the case, and ha[s] found that the Petitioner fails to show that there is newly discovered evidence, which could not have been discovered in time to move for a new trial, that creates a substantial or significant possibility that the results of his trial may have been different.

Douglas immediately filed in the Court of Special Appeals a "Notice of Application for Leave to Appeal" the Circuit Court's Order. In June 2010, the Court of Special Appeals ordered that Douglas's application be treated like a notice of appeal from the circuit court's decision. On our initiative, we issued a writ of certiorari prior to arguments in the Court of Special Appeals.

### B. *Appellant Curtis*

Curtis's underlying convictions—attempted murder in the first degree, assault, and related handgun offenses—arose out of the shooting of James Sanders on the evening of November 22, 1994. On that night, Sanders was "hacking" [4] for a drug dealer, Nike. Sanders dropped Nike off at the home of another individual, Dray. While Sanders waited in his car for Nike to return, an individual approached Sanders's car and shot at Sanders three times, in the shoulder and head. Sanders told

---

**4.** "Hacking" is the term used to describe the act of unlawfully working as a taxi driver.

police officers that a man named Tony, who lived on Richwood Avenue, shot him. He also picked Curtis's face out of a photographic lineup.[5]

During a "turn-up" at Curtis's last known address, an officer spoke with Curtis's grandmother, Margaret Adkinson. He wrote her name on his report, as well as the name "Margaret Eri."

Among other witnesses, Wayne Miles testified for the defense as an eyewitness.[6] Miles testified that he was in Dray's house when he heard two shots. He immediately went outside and saw a light-skinned man, not Curtis, fire a third shot into Sanders's car. He testified that he was not acquainted with Curtis.

The State impeached Miles's credibility by asking how he came to testify in the case. Miles responded that the day after the shooting, "a friend of mine named Aaron came ... [and] asked me did I know anything about [the shooting, and] I told him I seen [sic] the whole thing."[7] Miles then explained that Aaron "came back a month later and like he asked me my name, my name and stuff," because "I guess he wanted me to help out with the case."

On the last day of trial, during rebuttal, the State asked a detective about someone named "Airy." The detective responded: "The name came up in a turn up ... at [Curtis's

---

5. The record before us does not indicate whether the victim's identification of the shooter as Tony created conflict with the indictment of Curtis. We assume the lack of dispute arises from the probability that Curtis, whose middle name is Anthony, may have gone by the nickname Tony. This is supported by the fact that Curtis's last known residence was his grandmother's house on Richwood Avenue.

6. Curtis produced two other defense witnesses at trial: Anthony Jones, who testified that Sanders did not tell him that Curtis was the shooter, and Charlene Wise, who testified that Curtis was home with her the night of the shooting.

7. As indicated below, the identity (or identities) of "Aaron," "Eri" and "Airy" is/are disputed. Our use of one name over the other simply reflects the spelling of the name in the trial transcript.

grandmother's address]. Margaret Airy. The name was written on the report when they tried to do the turn up."

The State argued during closing that Miles's friend Aaron was really a friend of Curtis's named "Airy," or "Eri," drawing an inferential relationship with Margaret Eri, the name the officer had written on the report from the "turn-up" at Curtis's grandmother's address. The State argued that "Airy" (or Aaron or Eri) coerced Miles to testify on Curtis's behalf.

During deliberation, the jury asked two questions: "1) Can we have clarification on who [Miles] said came to his house to talk to him about the shooting? 2) Who is MARGARET ERI?" The court denied the defense's request to play back the videotape of Miles's testimony because the jury had to rely on its own memory. The court allowed each party one minute to argue to the jury a theory as to the identity of "Margaret Eri."

The jury ultimately convicted Curtis, and the Court of Special Appeals, in an unreported per curiam opinion, affirmed the convictions.

In 2010, Curtis filed a *pro se* petition for writ of actual innocence under C.P. § 8–301. Curtis argued that the newly discovered evidence was an affidavit of his grandmother, Margaret Adkinson, in which she swore that she had never mentioned the name of "Airy," or "Eri," to the police. Curtis asserted that this affidavit created a substantial or significant possibility that the outcome of his trial would have been different. Curtis also asserted that his grandmother's testimony did not become relevant until the end of the trial. Additionally, he argued that the evidence was unavailable to him within the ten-day period during which he could have filed for a new trial because his grandmother had fallen ill from the shock of Curtis's conviction and could not give an affidavit, and his imprisonment left him "lost, confused and bewilder[ed] of what options he had."

The Circuit Court denied Curtis's petition for writ of actual innocence without a hearing, by order dated April 9, 2010.

The court provided the identical reasoning given in Douglas's case:

The Court ha[s] reviewed all submissions and ha[s] considered all of the facts in the case, and ha[s] found that the Petitioner fails to show that there is newly discovered evidence which could not have been discovered in time to move for a new trial that creates a substantial or significant possibility that the result of his trial may have been different.

Subsequently, Curtis filed a notice of appeal in the Court of Special Appeals. On our initiative, we issued a writ of certiorari in Curtis's case prior to arguments in the Court of Special Appeals.

## II. Right to Appeal?

### A. *Statutory Right to Appeal Final Judgments*

The State has filed a motion to dismiss both of the consolidated appeals on the ground that the denial of an order entered pursuant to C.P. § 8–301 is not appealable. For the reasons that follow, we hold that such rulings are appealable. We therefore deny the State's motion.

■ In Maryland, criminal defendants do not have a constitutional right to appeal. *Cubbage v. State,* 304 Md. 237, 241, 498 A.2d 632, 634 (1985). Instead, "the right to seek appellate review is statutory; the Legislature can provide for, or preclude, [it]." *Fuller v. State,* 397 Md. 372, 382, 918 A.2d 453, 459 (2007). C.P. § 8–301 is silent with regard to a right of appeal. The State, as we shall see, mounts several arguments in support of its view that there is no right of appeal from the denial of a petition brought under C.P. § 8–301. Appellants counter that the General Assembly had no need to address the right of appeal in C.P. § 8–301 because Maryland Code (1974, 2006 Repl. Vol.), § 12–301 of the Courts & Judicial Proceedings Article ("C.J.") grants a general right to appeal final judgments. We shall address Appellants' argument first.

■ Section 12–301 provides:

### Right of appeal from final judgments—Generally

Except as provided in § 12–302 [8] of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment.

"[A] final judgment" is one that "either determine[s] and conclude[s] the rights of the parties involved or den[ies] a party the means to 'prosecut[e] or defend[ ] his or her rights and interests in the subject matter of the proceeding.'" *In re Billy W.*, 386 Md. 675, 688, 874 A.2d 423, 431 (2005) (quoting *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41, 566 A.2d 767, 773 (1989)) (some alterations in original). Important is whether "any further order is to be issued or whether any further action is to be taken in the case." *Id.* at 689, 874 A.2d at 431.

█ We conclude that the denial of a petition for writ of actual innocence is a final judgment under C.J. § 12–301. The ruling concludes a petitioner's rights as to all claims based on the newly discovered evidence alleged in the petition. Once the court denies the petition, nothing remains pending in the case. A denial under C.P. § 8–301 also denies a petitioner "the means to 'prosecut[e] or defend[ ] his or her rights and interest in the subject matter of the proceeding,'" *id.*, 874 A.2d at 431 (quoting *Rohrbeck*, 318 Md. at 41, 566 A.2d at 773) (alterations in original), because C.P. § 8–301(b)(5) requires the petitioner to "distinguish the newly discovered evidence claimed ... from any claims made in prior petitions." The

---

**8.** Section 12–302 provides specific exemptions from applicability of the appeal right granted by § 12–301, such as contempt proceedings and decisions from appellate review of District Court decisions. Section 12–302 also provides for specific instances in which the State may appeal in criminal cases. None of those provisions apply in the matter *sub judice.*

requirement prevents a petitioner from re-filing a petition on the basis of the same allegedly newly discovered evidence.

■ Moreover, the final judgment requirement of C.J. § 12–301 aims to "prevent piecemeal appeals and . . . the interruption of ongoing judicial proceedings." *Stephens v. State,* 420 Md. 495, 502, 24 A.3d 105, 109 (2011) (quoting *Sigma Reprod. Health Ctr. v. State,* 297 Md. 660, 665, 467 A.2d 483, 485 (1983)). Because a denial of a petition for writ of actual innocence leaves no matter pending with the trial court, our conclusion that it is a "final judgment" under C.J. § 12–301 comports with the purpose of the statute.

The State asserts that a denial of a petition for writ of actual innocence is not a final judgment because "[i]n criminal cases . . . the final judgment occurs after conviction, upon the imposition of sentence." The argument ignores the purpose of the final judgment rule set forth in C.J. § 12–301.

■ An order is interlocutory, and therefore not "final" for purposes of C.J. § 12–301, if "there are pending proceedings in which issues on the merits of the case remain to be decided." *Sigma,* 297 Md. at 666, 467 A.2d at 485–86 ("Ordinarily . . . an appeal from a pretrial or trial order will not be heard where there are pending proceedings in which issues on the merits of the case remain to be decided. Such orders are interlocutory, not final, and nonappealable until after entry of a final judgment."). *Sigma* does not dictate that rulings on matters arising after sentencing do not come within the final judgment rule. Indeed, we have not hesitated to review denials of motions filed under Rule 4–331(c). *See, e.g., State v. Matthews,* 415 Md. 286, 999 A.2d 1050 (2010); *Evans v. State,* 382 Md. 248, 855 A.2d 291 (2004), *Jackson v. State,* 358 Md. 612, 751 A.2d 473 (2000). Neither has the Court of Special Appeals. *See, e.g., Ramirez v. State,* 178 Md.App. 257, 941 A.2d 1141 (2008); *Mack v. State,* 166 Md.App. 670, 891 A.2d 369 (2006); *Jackson v. State,* 164 Md.App. 679, 884 A.2d 694 (2005).

The State, in further support of its argument that an order denying relief under C.P. § 8–301 is not appealable, urges us

to consider its legislative history. In the State's view, the history reflects that the General Assembly did not intend such orders to be subject to appellate review. The State points in particular to action the legislature took in 2010 (after Appellant's filed their petitions) to amend C.P. § 8–301. Among the proposed amendments was one that would have included express language conferring the right to appeal. H.B. 128, 2010 Session, First Reading January 18, 2010. That appeal provision was stricken from the amendments. *See* H.B. 128, 2010 Session, Third Reading File Bill, Amendment No. 2. The State interprets this action as reflecting the General Assembly's purpose that there be no right of appeal from a denial of a petition filed pursuant to the statute. We are not so persuaded.

We have explained why the denial of a petition filed pursuant to C.P. § 8–301 is a final judgment. Given that C.J. § 12–301 expressly authorizes the right of appeal from a final judgment, explicit language to that same effect in C.P. § 8–301 would be redundant, and thus unnecessary.

We also reject, as misplaced, the State's reliance on our decision in *Fuller* for the proposition that, absent an express appeal provision in C.P. § 8–301, there is none. *Fuller* is inapposite because we concluded in that case that the ruling sought to be appealed—the denial of a petition for commitment for substance abuse treatment pursuant to Maryland Code (1982, 2005 Repl. Vol., 2006 Supp.), § 8–507 of the Health–General Article ("H.G.") [9]—is not a final judgment, and, therefore, C.J. § 12–301 does not apply.[10] 397 Md. at

---

9. The current volume of the Health–General Article is Maryland Code (2000, 2009 Repl. Vol.). No amendment since *Fuller* affects our analysis here.

10. We reasoned in *Fuller* that a motion under H.G. § 8–507 was more akin to a habeas corpus action than a motion to modify sentence under Maryland Rule 4–345—which we noted could possibly be appealed— because relief under H.G. § 8–507 "does not affect the length of a sentence[,] ... initiates a statutory cause of action separate from the conviction, and may be filed repeatedly 'at any other time the defendant voluntarily agrees to participate in treatment.' " *Fuller v. State,* 397 Md.

394, 918 A.2d at 466. We rejected the argument that a denial of a motion under H.G. § 8–507 was a final judgment because a motion brought under that statute "may be filed repeatedly and the denial of a single petition does not preclude [the defendant] from filing another." *Id.*, 918 A.2d at 466. Because C.J. § 12–301 does not apply, whether H.G. § 8–507 itself provides an express right to appeal was essential to the analysis. Moreover, unlike petitions pursuant to H.G. § 8–507, a petitioner under C.P. § 8–301 has but one chance to assert a particular claim of newly discovered evidence.[11]

For all these reasons, we hold that a denial of a petition for writ of actual innocence is a final judgment under C.J. § 12–301.

### B. *Uniform Postconviction Procedure Act's Express Denial?*

The conclusion that C.J. § 12–301 grants a general right to appeal denials of C.P. § 8–301 petitions does not end our inquiry because C.J. § 12–301 precludes appeal where "expressly denied by law." We must now consider the State's assertion that the Uniform Postconviction Procedure Act ("UPPA"), codified at C.P. §§ 7–101 through 7–301, strips the right of appeal from actions brought under C.P. § 8–301.

Section 7–107(b)(1), the relevant section of the UPPA, provides, in pertinent part:

In a case in which a person challenges the validity of confinement under a sentence of . . . imprisonment by seek-

---

372, 389, 918 A.2d 453, 463 (2007) (quoting H.G. § 8–507). We discussed extensively the history of the right to appeal the denial of a habeas corpus petition and recognized that the legislature had conferred an express appeal right in response to our prior refusal to review the denial of such petitions. *Id.* at 389–93, 918 A.2d at 463–66. We concluded, therefore, that lack of an express right to appeal in H.G. § 8–507 was determinative. *Id.* at 393, 918 A.2d at 465–66.

11. We do not mean to intimate that a convicted defendant is limited to filing only one petition, pursuant to C.P. § 8–301; we do mean that a convicted defendant is limited to raising only once, under the statute, a claim that a particular item of evidence is newly discovered.

ing the writ of habeas corpus or the writ of coram nobis or by invoking a common law or *statutory remedy* other than this title, a person may not appeal to the Court of Appeals or the Court of Special Appeals.

(emphasis added). The State argues that § 7–107(b)(1) of the UPPA expressly denies the right to appeal a denial under C.P. § 8–301. Appellants respond that the UPPA does not apply to C.P. § 8–301, because claims of newly discovered evidence made pursuant to that statute are not cognizable under the UPPA, and C.P. § 7–107(b) was intended only to deny appeals in matters that could have been heard under the UPPA. We conclude that Appellants have the better part of the argument.

 The purpose of the UPPA was to streamline "into one simple statute all the remedies, beyond those that are incident to the usual procedures of trial and review, which are . . . present[ly] available for challenging the validity of a sentence." *State v. Zimmerman,* 261 Md. 11, 24, 273 A.2d 156, 163 (1971) (internal quotation marks omitted) (quoting *State v. D'Onofrio,* 221 Md. 20, 29, 155 A.2d 643, 647 (1959)). The UPPA does not eliminate alternative remedies, such as habeas corpus, coram nobis, or other common law or statutory remedies, though it restricts the right to appeal orders pursuant to those traditional remedies. *Brady v. State,* 222 Md. 442, 447, 160 A.2d 912, 915–16 (1960). But where the UPPA does not provide a remedy, the preclusive effects of C.P. § 7–107(b)(1) do not apply. *See Gluckstern v. Sutton,* 319 Md. 634, 662, 574 A.2d 898, 912 (1990) (explaining that, "[i]n situations where the Post Conviction Procedure Act did not provide a remedy, and thus was not a substitute for habeas corpus, the enactment of the new statute provided no reason for restricting appeals in habeas corpus cases").

 It is settled that questions of guilt or innocence cannot be raised in petitions for postconviction relief. *See, e.g., Thornton v. Md. Penitentiary,* 241 Md. 715, 717, 216 A.2d 894, 895 (1966) (per curiam) (concluding that no grounds for postconviction relief exist where petitioner claims actual innocence). It is just as well settled that a petition for postconviction relief "is not a substitute for a motion for a new trial."

*Roe v. Patuxent Inst.,* 240 Md. 717, 719, 214 A.2d 162, 163 (1965) (per curiam). C.P. § 8–301 provides a defendant an opportunity to seek a new trial based on newly discovered evidence that speaks to his or her actual innocence, as evident from the title of the statute itself.

Furthermore, the legislative history of C.P. § 8–301 reflects a legislative purpose that the statute extend the right to seek a new trial on the basis of newly discovered evidence beyond that afforded a convicted defendant under Maryland Rule 4–331(c). The Fiscal and Policy Note that accompanied Senate Bill 486, which became C.P. § 8–301 in 2009, included the statement that the then-current law afforded a defendant relief under "Rule 4–331 ... if newly discovered evidence exist[ed] that could not have been discovered by due diligence in time to move for a new trial within 10 days after the verdict." The Note also stated that defendants had one year within which to file Rule 4–331 motions based on newly discovered evidence. *Id.* The Note mentioned, too, that Virginia law provided defendants the opportunity to present newly discovered evidence within 21 days after sentencing, which right the Virginia legislature "expanded ... in 2004 to allow felons to submit new evidence other than DNA tests." *Id.*

C.P. § 8–301, as originally enacted,[12] declared, in subsection (a):

A convicted person, at any time, may file a petition for writ of actual innocence ... if the person claims that there is newly discovered evidence that: (1) creates a substantial or significant possibility that the result may have been differ-

---

12. The statute was amended in 2010. Section 8–301(a) now provides:
 A person charged by indictment or criminal information with a crime triable in circuit court and convicted of that crime may, at any time, file a petition for writ of actual innocence in the circuit court for the county in which the conviction was imposed if the person claims that there is newly discovered evidence that:
 (1) creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined; and
 (2) could not have been discovered in time to move for a new trial under Maryland Rule 4–331.

ent, as that standard has been judicially determined; and (2) could not have been discovered in time to move for a new trial under Maryland Rule 4–331.

2009 Md. Laws ch. 744. C.P. § 8–301 by its language embodies the apparent intention of the General Assembly to enact in Maryland (similar to the Virginia enactment) a broader claim of actual innocence, based on newly discovered evidence, than that provided under Md. Rule 4–331(c).[13]

We are persuaded that the remedy afforded under C.P. § 8–301, like the similar (albeit more restricted) remedy provided by a motion for new trial, *see Patuxent Inst.*, 240 Md. at 719, 214 A.2d at 163, is necessarily part of "the usual procedures of trial and review" available to a criminal defendant that were not intended to fall within the scope of postconviction relief, *see Zimmerman*, 261 Md. at 24, 273 A.2d at 163 ("The [UPPA] was passed with the intent that there be brought together 'into one simple statute all the remedies, *beyond those that are incident to the usual procedures of trial and review*, which are at present available for challenging the validity of a sentence.' " (quoting *Brady*, 222 Md. at 447, 160 A.2d at 915–16) (emphasis added)). We therefore conclude that the UPPA's appeal preclusion does not apply to claims arising under C.P. § 8–301.

### C.

In sum, we hold that the denial of a petition under C.P. § 8–301 is a final judgment and may be appealed pursuant to C.J. § 12–301. Furthermore, the UPPA appeal-stripping provision does not apply to C.P. § 8–301. Accordingly, the State's Motion to dismiss is denied.

### III. The Merits of Appellants' Claims

#### A. *The hearing requirement*

Both Appellants contend that the Circuit Court erred in denying their C.P. § 8–301 petitions, without affording them a

---

**13.** Subsection (c) was modified in 2010, but none of the amendments are material to our analysis here.

hearing. Appellants contend generally that the statute establishes a pleading requirement that, if met, automatically triggers a hearing, provided one was requested. The State responds that the express language of the statute allows the trial court to deny a petition for writ of actual innocence without a hearing, even if the petition has met the procedural pleading requirements, "if the court finds that the petition fails to assert grounds on which relief may be granted."

To determine whether C.P. § 8–301 mandates a hearing before the trial court may dismiss the petitions and, if so, under what circumstances, we turn to our rules of statutory interpretation:

> In statutory interpretation, our primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules. We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. Occasionally we see fit to examine extrinsic sources of legislative intent merely as a check of our reading of a statute's plain language. In such instances, we may find useful the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments.

*Evans v. State,* 420 Md. 391, 400, 23 A.3d 223, 228 (2011) (quoting *Ray v. State,* 410 Md. 384, 404–05, 978 A.2d 736, 747–48 (2009)).

Section 8–301(e) provides:

(1) Except as provided in paragraph (2) of this subsection, the court shall hold a hearing on a petition filed under this section if the petition satisfies the requirements of subsection (b) of this section and a hearing was requested.

(2) The court may dismiss a petition without a hearing if the court finds that the petition fails to assert grounds on which relief may be granted.

Section 8–301(b), in turn, provides:

(b) *Requirements.*—A petition filed under this section shall:

(1) be in writing;

(2) state in detail the grounds on which the petition is based;

(3) describe the newly discovered evidence;

(4) contain or be accompanied by a request for a hearing if a hearing is sought; and

(5) distinguish the newly discovered evidence claimed in the petition from any claims made in prior petitions.

The statute also defines "grounds":

(a) *Grounds.*—A person charged by indictment or criminal information with a crime triable in circuit court and convicted of that crime may, at any time, file a petition for writ of actual innocence in the circuit court for the county in which the conviction was imposed if the person claims that there is newly discovered evidence that:

(1) creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined; and

(2) could not have been discovered in time to move for a new trial under Maryland Rule 4–331.

C.P. § 8–301(a).

C.P. § 8–301(e)(2) grants the court the authority to dismiss a petition that, although compliant with the procedural requirements of subsection (b), does not assert grounds upon which relief could be granted. The language of the statute is key. It requires that a petition "assert" grounds for relief; it does not require the petitioner to satisfy the burden of proving those grounds in the papers submitted. Additionally, the plain language of the statute declares that a petitioner has the requisite grounds if he "*claims* that there is newly discovered evidence that: (1) creates a substantial or significant possibili-

ty that the result may have been different . . .; and (2) could not have been discovered in time to move for a new trial under Maryland Rule 4–331." C.P. § 8–301(a) (emphasis added). Nothing in the language of the statute requires more than that a petitioner plead those assertions before the hearing requirement is triggered. We are prohibited by our rules of construction from reading into a statute a construction not reflected by its plain language, *Price v. State,* 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003), and we will not do so here.

We therefore hold that the statute establishes only a burden of pleading grounds for relief, not of proving them, and that a trial court may dismiss a petition without a hearing when one was requested, pursuant to C.P. § 8–301(e)(2), only when a petitioner fails to satisfy the pleading requirement. The pleading requirement mandates that the trial court determine whether the allegations could afford a petitioner relief, if those allegations would be proven at a hearing, assuming the facts in the light most favorable to the petitioner and accepting all reasonable inferences that can be drawn from the petition. That is, when determining whether to dismiss a petition for writ of actual innocence without a hearing pursuant to C.P. § 8–301(e)(2), provided the petition comports with the procedural requirements under C.P. § 8–301(b), the trial court must consider whether the allegations, if proven, consist of newly discovered evidence that "could not have been discovered in time to move for a new trial under Maryland Rule 4–331" and whether that evidence "creates a substantial or significant possibility that the result [of the trial] may have been different." C.P. § 8–301(a).

This standard does not require that a trial court take impossibilities as truths. For example, if a petition asserts, as "newly discovered," evidence that was clearly known during trial, then the evidence cannot be "newly discovered," and the trial court may dismiss the petition without a hearing. Similarly, if a petition asserts procedural errors committed by the trial court, that is not "newly discovered evidence." If, however, the petition alleges newly discovered evidence that "could

not have been discovered in time to move for a new trial under Maryland Rule 4–331," and which "creates a substantial or significant possibility that the result may have been different," then it would be error to dismiss the petition merely because the petition itself did not convince the trial court without a hearing.

In *Jackson* we recognized the persuasive value of a hearing. 358 Md. at 625, 751 A.2d at 479–80. As we explained,

> [The right to a hearing] represents an assessment by us of the significance of the matter under consideration, at least to the parties, and, given that significance, of their right, if they choose to exercise it, to present directly to the court, *viva voce,* the reasons why they should prevail. It is a recognition that personal, vocal communication with the judge may not only itself be a more effective means of persuasion than written documents that may be read hurriedly and not fully appreciated or understood, but that a hearing offers at least a limited opportunity for dialogue, allowing for clarification, for greater precision, for addressing concerns harbored and expressed by the judge. It is a right that, ordinarily, may be waived, but when not waived, we are loathe, in the absence of extraordinary circumstances, to find its denial harmless. It would often be a matter of pure speculation whether prejudice ensued—whether, had the party been given the opportunity to make his or her "pitch" at a hearing, the result may have been different—and that is much more likely the case when the decision may rest upon the resolution of factual disputes or the exercise of discretion and judgment.

*Id.,* 751 A.2d at 479–80. We also recognized the necessity for courts to adhere strictly to rules mandating a hearing in particular instances. *Id.* at 623, 751 A.2d at 479. We noted that, "[e]ven when afforded only by rule, and not as an incident of due process of law, the right to a hearing is of fundamental importance." *Id.* at 625, 751 A.2d at 479–80.

We also have recognized the importance of holding a hearing even when one is neither mandated by statute nor by

Article 24 of the Maryland Declaration of Rights. In *Arey v. State*, 400 Md. 491, 929 A.2d 501 (2007), we had before us a petition filed pursuant to C.P. § 8–201 (DNA evidence— Postconviction review). That statute requires the court to order DNA testing if, *inter alia*, "a reasonable probability exists that the DNA testing has the scientific potential to produce exculpatory or mitigating evidence." C.P. § 8–201(d). We reasoned that,

> given the purpose underlying the statute, which is to provide a means for incarcerated persons to produce exculpatory or mitigating evidence relevant to a claim of wrongful conviction or sentencing, and notwithstanding that [the statute] is silent on the issue of hearings, if the court determines that there is a *genuine* factual dispute as to whether the evidence exists, ordinarily the court should hold a hearing.

*Id.* at 507, 929 A.2d at 510. The same reasoning applies where C.P. § 8–301(e) mandates a hearing on a petition for actual innocence in the scenarios explained above.

### B. *Sufficiency of the Petitions in the Cases at Bar*

We begin by noting that both Douglas and Curtis filed their petitions *pro se.* It has become our practice to construe liberally filings by *pro se* inmates, particularly when the statute involved is remedial. *Matthews*, 415 Md. at 298, 999 A.2d at 1057 (giving "benefit of a liberal construction of the petition, particularly in light of the salutary purposes of [C.P. § 8–301] . . . and the lack, so far, of rules of procedure to guide the process." [14] (quoting *Simms v. State*, 409 Md. 722, 731–32, 976 A.2d 1012, 1018 (2009)) (internal quotation mark omitted)); *Simms*, 409 Md. at 731, 976 A.2d at 1018 (recognizing federal practice to construe liberally *pro se* pleadings and applying that practice to inmate's petition for DNA testing

---

14. We recognize that new Rule 4–332 became effective October 1, 2011, and applies to actions commenced on or after that date, "and, insofar as practicable, to all actions then pending[.]" 38 Md. Reg. 1195 (September 23, 2011).

under C.P. § 8–201). It is appropriate to construe liberally both petitions at issue.

### 1. *Douglas's Petition*

██ Douglas asserts that he was entitled to a hearing before the court denied his petition because he satisfied all of the procedural requirements of C.P. § 8–301(b). The State, though, contends that Douglas's petition does not comport with the statute's procedural requirements, including that he did not request a hearing. Specifically, the State asserts, *inter alia,* that the claims are procedural, not evidentiary; the petition does not indicate that the evidence was newly discovered and could not have been discovered earlier; and the petition does not assert the materiality of the evidence. We disagree. Construing Douglas's petition liberally, we conclude that the petition satisfies the statute's pleading requirements.

The first requirement is easily satisfied because Douglas submitted his petition in writing. The petition also satisfies the second requirement, that Douglas "state in detail the grounds on which the petition is based." C.P. § 8–301(b)(2). The petition includes several detailed allegations of error committed by the trial judge in addition to several items of evidence that were discovered years after Douglas's trial and sentencing. Douglas also includes a blanket assertion that

> That Statement Of Facts with Exhibits in Support of Statement Of The Case is of great importance, which will show "that Douglas was an continual to be an Victim of Miscarriage Of Justice, caused by these Police Officers, Assistant State's Attorney Schenker and Judge Johnson actions and/or lack of actions and perjury' testimonies by witnesses and Douglas is actual innocence. [Sic.]

██ We also conclude that Douglas's petition satisfied the third procedural requirement, that Douglas "describe the newly discovered evidence." C.P. § 8–301(b)(3). As mentioned above, Douglas made several allegations. Among them he alleged that, on March 9, 2007, an article was published that "exposed Joseph Kopera ... as an perjurer.' [Sic.]" Officer

Kopera was one of the expert witnesses who had testified for the State during Douglas's trial. This allegation, viewed in the light most favorable to Douglas, could be proven to be newly discovered evidence.

Douglas also satisfied the fourth requirement under C.P. § 8–301(b)(4), which requires that the petition request a hearing if one is sought. Although Douglas did not expressly state "I request a hearing," we are persuaded that the petition, liberally construed, reflects Douglas's indicated desire for a hearing.[15] His petition recited the complete language of the statute, which included the provision that the petition include a request for a hearing. Additionally, he filed a proposed "Writ of Habeas Corpus" for the warden to produce him for a hearing.

Douglas also has satisfied C.P. § 8–301(b)(5), that he "distinguish the newly discovered evidence claimed in the petition from any claims made in prior petitions." We have said that a petitioner may not file multiple petitions based on the same claim, but that does not prevent a petitioner from filing subsequent petitions asserting grounds of different newly discovered evidence. The possibility of filing multiple petitions asserting different grounds gives context to the requirement that a petitioner distinguish the evidence in the instant petition from claims in prior petitions. Douglas asserts that the phrase "prior petitions" does not refer to every prior filing.[16] We, too, are persuaded that the language does not

---

**15.** The State argues that liberal construction in this case is inappropriate because requesting a hearing is procedural and this Court, like federal courts, requires that *pro se* petitioners follow the same rules and procedures as lawyers. However, as we noted in *Simms v. State*, 409 Md. 722, 731 n. 9, 976 A.2d 1012, 1018 n. 9 (2009), "[t]he notion that the contents of an unrepresented criminal inmate's pleading should be liberally construed does not conflict with the proposition that unrepresented litigants are expected to follow the rules of procedure." Therefore, we will not construe against Douglas the fact that he did not explicitly say the words, "I want a hearing."

**16.** Douglas filed two postconviction petitions and a motion to reopen his closed postconviction proceeding, which, like the petitions, was also

extend so broadly. As this was Douglas's first petition under C.P. § 8–301, he has no claims to distinguish. We conclude, therefore, that Douglas has satisfied all of the requirements of (b)(5), such that a hearing was required pursuant to C.P. § 8–301(e)(1) before the trial court denied Douglas's petition.

It remains for us to consider whether the court, nonetheless, could dismiss the petition without a hearing because Douglas "fail[ed] to assert grounds on which relief may be granted," pursuant to C.P. § 8–301(e)(2). We discussed above that C.P. § 8–301(e)(2) authorizes the trial court to dismiss a petition for writ of actual innocence without a hearing even though one was requested, if the court concludes that the allegations, if proven, could not entitle a petitioner to relief. In this regard, the court erred in summarily denying the petition.

Douglas alleged grounds that, if proven, could entitle him to relief. Douglas asserted that there was newly discovered evidence that Officer Kopera, who had testified at Douglas's trial, had falsified his credentials. Douglas submitted as an exhibit with his petition a newspaper article explaining his allegation of newly discovered evidence. Dated March 9, 2007, the article reported that "Joseph Kopera, head of the Maryland State Police firearms unit, claimed on witness stands to have degrees that he never earned.... Questions regarding the longtime firearms and toolmarks examiner's credentials were raised several weeks ago by state public defenders working with the Innocence Project." The article explained that "the chief attorney with the ... Innocence Project ... became concerned about Kopera's qualifications while reviewing transcripts" and noting inconsistencies regarding the credentials he testified he had earned. Given that there were "hundreds of people he helped convict" and that Kopera had worked for "21 years in the Baltimore Police Department's crime laboratory before he was lured away in 1991 to join the

denied. Upon each denial, Douglas sought leave to appeal. The Court of Special Appeals denied each request.

state police," viewing inferences in the light most favorable to Douglas, it could be that the evidence could not have been discovered within time to move for a new trial under Rule 4–331.

Further, Douglas's petition asserted that Kopera "help to denied Douglas a Fair Jury Trial, with his perjurer' testimony at Douglas' Jury Trial. [Sic.]" These allegations assert a basis that the newly discovered evidence "creates a substantial or significant possibility that the result [of Douglas's trial] may have been different." C.P. § 8–301(a)(1).

In short, Douglas's petition satisfied the procedural requirements of C.P. § 8–301(a)(1). He is entitled to the hearing on the petition he requested. We emphasize that, although Douglas has satisfied the pleading requirement to assert grounds for relief, it does not follow automatically that he can prove his claim.

### 2. *Curtis's Petition*

We now turn to the merits of Appellant Curtis's appeal. Unlike Douglas's petition, Curtis's petition for writ of actual innocence contains only one claim of newly discovered evidence: an affidavit from his grandmother, indicating that she is willing to testify in court that she never mentioned the name "Airy," or "Eri," to the police. The State contends that Curtis's petition fails because he did not assert that the affidavit could not have been obtained within one year after the mandate from the Court of Special Appeals and, moreover, the affidavit is not newly discovered evidence because Curtis indicates in his petition that he was aware of the information after his conviction. The State further contends that, even if the affidavit was newly discovered evidence, the grandmother's testimony would be unlikely to create a significant or substantial possibility that Curtis would be found not guilty because the affidavit does not undermine the victim's unequivocal testimony that Curtis shot him. Curtis counters that his grandmother's testimony would create a substantial or significant possibility that a jury would find him not guilty because, as evidenced by the jury's interest in the identity of "Airy," or

"Eri" during their deliberations, the theory that Curtis coerced witnesses factored heavily into Curtis's conviction.

We agree with the State that the Circuit Court properly denied Curtis's petition because the evidence of his grandmother's affidavit is not "newly discovered evidence." We therefore need not consider whether Curtis has satisfied the other requirements that might entitle him to a hearing on the petition. In *Argyrou v. State*, we explained that, "[e]xculpatory evidence known ... prior to the expiration of the time for filing a motion for a new trial, though *unavailable*, in fact, is not newly discovered evidence." 349 Md. 587, 600 n. 9, 709 A.2d 1194, 1200 n. 9 (1998) (emphasis added). Consequently, even construing Curtis's *pro se* petition liberally, his claim fails. Curtis indicated in his petition that he wanted to obtain an affidavit from his grandmother stating that she never mentioned the name "Airy," or "Eri," to the police, but could not because of his grandmother's health and his own incarceration. As evidence that is known but unavailable does not constitute "newly discovered evidence," Curtis's claim does not meet the requirements to obtain a hearing under C.P. § 8–301.

## IV.

In summary, we hold that denials of petitions filed under C.P. § 8–301 are subject to appeal as final judgments. We also hold that C.P. § 8–301(e)(2) establishes a burden of pleading for a petitioner. If that burden is satisfied, and if the petition otherwise satisfies the statutory requirements for a hearing, then the court may not dismiss the petition without first holding a hearing. The statute allows the court to dismiss a petition without affording a petitioner a hearing when, assuming the facts in the light most favorable to the petitioner and accepting all reasonable inferences that can be drawn from the petition, the petition fails to assert grounds upon which relief can be granted, i.e. that there is newly discovered evidence that creates a significant or substantial possibility that the trial results would be different and that the

evidence could not have been discovered in time to move for a new trial under Rule 4–331.

Applying these holdings to the cases at bar, we conclude that Douglas is entitled to a hearing on his petition for writ of actual innocence. We further conclude that the Circuit Court's denial of Curtis's petition must stand. We note that an amendment to C.P. § 8–301, providing for an opportunity for the State to respond within 90 days of the receipt of petitioner's written notice of the petition, was enacted after Douglas's petition was denied. Therefore, on remand, the State shall have an opportunity to submit a written response to Doüglas's petition. We make no conclusions regarding the underlying merits of Douglas's petition and we recognize that decisions on the merits of requests for new trials based on newly discovered evidence, whether filed pursuant to Rule 4–331 or the C.P. § 8–301, are committed to the hearing court's sound discretion.

**ORDER OF THE CIRCUIT COURT FOR BALTIMORE CITY DENYING APPELLANT DOUGLAS'S PETITION FOR WRIT OF ACTUAL INNOCENCE VACATED; CASE REMANDED TO THAT COURT FOR FURTHER PRO-CEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY THE MAYOR AND CITY COUN-CIL OF BALTIMORE.**

**ORDER OF THE CIRCUIT COURT FOR BALTIMORE CITY DENYING APPELLANT CURTIS'S PETITION FOR WRIT OF ACTUAL INNOCENCE AFFIRMED; COSTS TO BE PAID BY APPELLANT CURTIS.**

HARRELL, BATTAGLIA, and ADKINS, JJ., dissent.

HARRELL, J., dissenting, in which BATTAGLIA and ADKINS, JJ., join.

I dissent. The State's motion to dismiss these appeals, as not allowed by law, should be granted.

The Majority opinion concedes, at op. 170–71, 31 A.3d at 258–59, that neither Douglas nor Curtis are entitled to appeal

the denials of their petitions for writs of actual innocence unless a right of appeal is granted by statute. The creation in 2010 by the Legislature of the petition for writ of actual innocence mechanism for convicted defendants in criminal cases to seek a new trial based on newly discovered evidence (which could not have been discovered in time to move for a new trial under Md. Rule 4–331) clearly did not provide for an appeal from the denial of such a petition. See Md.Code, Crim. Proc. Art., § 8–301 (2011). In fact, an effort to include a right to appeal in the new statute (House Bill 128 of 2010) failed inclusion in the final bill. We have said in an analogous context that "[w]e generally presume that the Legislature acts with full knowledge of prior and exiting law, legislation, and policy ... and obviously could have provided an appellate remedy for the denial...." *Fuller v. State*, 397 Md. 372, 393, 918 A.2d 453, 465 (2007) (citations omitted).

The Majority opinion, stepping into this void in the specific statute in play here, supplies that which the Legislature chose conspicuously not to provide, by placing the weight of the Majority's conclusion that a right of appeal exists in these cases on the general final judgment provision of Md.Code, Cts. & Jud. Proc. Art., § 12–301 (2011). This statute cannot bear that weight. My reading of § 12–301 (like the State's) is that, in a criminal law context, it grants a right of direct appeal from a final judgment of conviction and sentencing, whether as the result of an initial trial or a court-ordered re-trial. *See Sigma Reproductive Health Ctr. v. State*, 297 Md. 660, 665–66, 467 A.2d 483, 485 (1983); *accord Warren v. State*, 281 Md. 179, 182–88, 377 A.2d 1169, 1171–74 (1977). The distinction to be made is between the underlying criminal case and a collateral attack on a criminal judgment, such as via post-conviction petition, habeas corpus, or coram nobis. *See State v. Matthews*, 415 Md. 286, 308, 999 A.2d 1050, 1063 (2010) (citing *Ruby v. State*, 353 Md. 100, 724 A.2d 673 (1999)). The former, including denials of motions for a new trial filed under Md. Rule 4–331, are the type of final judgments for which § 12–301 of the Cts. & Jud. Proc. Art. serves as statutory authority for the availability of an appeal. The latter, now including

petitions for writ of actual innocence, are dependent on other statutory authority, if any, for a right of appeal. As for petitions for a writ of actual innocence, none exist. The denials of the petitions in these cases are not susceptible of fitting under the umbrella of permitted appeals from statutorily-permitted interlocutory orders, nor do they fall within the collateral order doctrine.

Judge BATTAGLIA and Judge ADKINS authorize me to state that they join the views expressed in this dissent.