Circuit Court for Cecil County
Case No. 07-K-06-000806

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 785

September Term, 2013

_____

WILLIAM LOUIS KRANZ

v.

STATE OF MARYLAND

_____

Woodward, C.J.,
Graeff,
Berger,

JJ.

_____

Opinion by Berger, J.

_____

Filed:  August 30, 2017

William Louis Kranz, appellant, was convicted, following a jury trial in the Circuit Court for Cecil County, of two counts each of assault in the first degree and reckless endangerment. The court then sentenced Kranz to a total term of five years' imprisonment, to be followed by three years' supervised probation.

Thereafter, Kranz filed a petition, under the Maryland Uniform Postconviction Procedure Act, seeking to vacate his convictions on the ground that the State had committed a *Brady* violation -- that, at the time of his trial, an Assistant State's Attorney in Cecil County, although not involved in Kranz's criminal case, was representing the two victims in that case in a separate civil action against Kranz, arising out of the same incident, but that that conflict had not been disclosed to the defense. The postconviction court ruled that the State had, indeed, failed to make a required disclosure to Kranz, but it nonetheless denied his petition on the basis that the State's nondisclosure was not "material" because it did not "create a reasonable probability of a different result."

Subsequently, Kranz filed an application for leave to appeal from that decision, which this Court granted. It, therefore, appeared that the issue before us was whether the postconviction court had erred in concluding that the State's nondisclosure was not "material" and, concomitantly, whether the postconviction court had applied the correct materiality standard under the facts of this case.[1]  However, unbeknownst to the

---

[1] Generally, the materiality standard in a case alleging a *Brady* violation is "whether there is a '*reasonable probability*' that disclosure of the suppressed evidence would have led to a different result." *Yearby v. State*, 414 Md. 708, 717 (2010) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). A different standard applies, however, in cases where "the undisclosed evidence demonstrates that the prosecution's case includes perjured

applications panel, sometime after Kranz had filed his application for leave to appeal but prior to the granting of that application, Kranz completed serving his sentence, including the three-year probationary period.

In its brief, the State has included a motion to dismiss, asserting that, upon the completion of Kranz's sentence, this Court was divested of appellate jurisdiction and therefore must dismiss this appeal. For the reasons that follow, we shall grant that motion.

## BACKGROUND

We quote the memorandum opinion of the postconviction court for factual background:

> Kranz was convicted of first degree assault and reckless endangerment by a jury in the Circuit Court for Cecil County, for shooting victims Brandi Schaffer and George McSwain when they were accidentally driving on his property. After his conviction, but before sentencing, Kranz learned that Ms. Schaffer and Mr. McSwain had filed a civil suit against him over the same incident. They were seeking damages in excess of one million dollars. They obtained Kevin Urick as counsel in the civil suit.
>
> Mr. Urick (hereafter ASA Urick) serves as a full time [A]ssistant [S]tate's [A]ttorney while also maintaining a

---

testimony and that the prosecution knew, or should have known, of the perjury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). In that case, a "new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury[.]'" *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 271 (1959)). Whether the latter standard should apply in a case such as this, where the prosecution apparently failed to disclose a conflict of interest, which, arguably, created an appearance that the prosecution had a financial interest in obtaining a conviction, is unclear, and, given our disposition of this appeal, we need not further consider that question.

private practice.[2]  As an ASA, Mr. Urick worked under the State's Attorney, Christopher Eastridge:  the prosecuting attorney in Mr. Kranz's criminal trial.  ASA Urick was in no way involved in the criminal prosecution of Mr. Kranz and had no contact with Mr. Eastridge regarding preparation for the case.  However, Mr. Eastridge was aware of ASA Urick's representation of Ms. Schaffer and Mr. McSwain in the civil suit and at no time disclosed this information to Mr. Kranz nor to his attorney.

Mr. Kranz's criminal trial may reasonably be considered close as he was tried twice as a result of a hung jury in his first trial.[3]  In the latter trial the [S]tate's case was put on primarily by use of circumstantial evidence as the [S]tate was not able to present any direct evidence against Mr. Kranz.  Likewise, victims Ms. Schaffer and Mr. McSwain were the [S]tate's key witnesses.  The record states that neither Ms. Schaffer nor Mr. McSwain could positively identify Mr. Kranz as the shooter and instead could only testify as to seeing a shadowy figure immediately prior to the shots being fired.  Mr. Kranz's trial counsel cross-examined both witnesses but ultimately was unsuccessful in persuading the jury to find in favor of Mr. Kranz.

After the jury's verdict but prior to being sentenced, Mr. Kranz was notified of the civil suit filed against him by Ms. Schaffer and Mr. McSwain.  Subsequently, he notified his trial counsel of the information.  Prior to sentencing defense counsel filed a motion for new trial that did not include claims regarding a *Brady* violation by the [S]tate for failing to disclose ASA Urick's representation of Ms. Schaffer and Mr. McSwain in the civil suit.  The trial court denied this motion.  Mr. Kranz filed an appeal on August 17, 2009.

---

[2] It appears that Urick still maintains a private practice in Cecil County but no longer works as an Assistant State's Attorney in that county.  *See* "Kevin Urick, Attorney at Law, Attorney Profile," available at http://www.kevinurick.net/attorney_profile.html (last visited June 28, 2017).

[3] Not only was there a mistrial declared after the first trial, as a result of a hung jury, but, furthermore, the jury at the retrial deliberated three days before reaching a verdict.

On September 23, 2009 another motion for new trial was filed. A hearing for this new trial motion was held on December 11, 2009 before Judge Kahl. This motion was denied. Subsequently, the Court of Special Appeals issued Judge Moylan's unreported opinion on November 9, 2010 affirming Judge Kahl's denial of Mr. Kranz's motion for a new trial.[4]

*Kranz v. State*, No. 07-K-06-000806, slip op. at 2-3 (Cecil Cnty. Cir. Ct. May 20, 2013).

Kranz was sentenced, on July 31, 2009, to two consecutive five-year sentences for the first-degree assault convictions, the latter suspended, to be followed by three years' probation.[5] He was thereafter released (apparently through operation of diminution credits, *see* Correctional Services Article, §§ 3-701 to 3-711), and his probation concluded on April 7, 2015.[6] Thereafter, on August 31, 2016, his application for leave to appeal from the denial of his postconviction petition was granted. As we shall see, that timeline is crucial to our disposition of the instant appeal.

---

[4] In fact, this Court concluded that Kranz's September 23, 2009 motion for new trial was not properly before it because that motion had been filed *after* the notice of appeal was filed, and *no* notice of appeal was filed after the September 23, 2009 motion was denied. *Kranz v. State*, No. 1548, Sept. Term, 2009, slip op. at 2-3 (filed Nov. 9, 2010). The panel opinion went on to conclude that, even had a proper appeal been taken from the denial of the September 23, 2009 motion for new trial, Kranz could not have prevailed because the allegation raised would have had to qualify as newly discovered evidence, under Maryland Rule 4-331(c), but it was clear from the record that it did not. *Id.*, slip op. at 16-17.

[5] The reckless endangerment convictions were merged for sentencing purposes.

[6] The record submitted to this Court does not contain sufficient information for us to determine the factual basis for this statement. Attached to the State's motion to dismiss, however, is a letter, from Eleanor McMullen, Special Assistant to the Director of the Division of Parole and Probation, addressed to appellee's counsel, stating the supporting facts. In his reply brief, Kranz does not challenge those factual assertions, claiming instead that they do not support the legal conclusion that his appeal should be dismissed. We shall therefore assume the veracity of the assertions stated in that letter. Md. Rule 5-201(b), (c).

4

## DISCUSSION

### I.

This appeal turns upon an issue of statutory construction, which is a question of law that we review *de novo*. *Moore v. State*, 388 Md. 446, 452 (2005). The canons of statutory construction are well settled and begin with the "cardinal rule"—that is, we must "ascertain and effectuate the intent of the Legislature." *Jamison v. State*, 450 Md. 387, 396 n.9 (2016) (citation and quotation omitted). "In ascertaining legislative intent, we first examine the plain language of the statute, and if the plain language of the statute is unambiguous and consistent with the statute's apparent purpose, we give effect to the statute as it is written." *Id.*

### II.

Maryland Code (2001, 2008 Repl. Vol.), Criminal Procedure Article ("CP"), § 7-101, the first section of the Maryland Uniform Postconviction Procedure Act, provides as follows:

> **This title** applies to **a person** convicted in any court in the State **who is**:
>
> (1) confined under sentence of imprisonment; or
>
> (2) on parole or probation.

(Emphasis added.)

That provision, known as the "custody" requirement, *Obomighie v. State*, 170 Md. App. 708, 712 n.2, *cert. denied*, 396 Md. 13 (2006) (citing *McMannis v. State*, 311 Md. 534, 539 (1988)), "is jurisdictional in nature." *Id.* at 713. In *Obomighie*, we examined the

5

application of that jurisdictional requirement to a person who, at an earlier stage of a postconviction proceeding, had been eligible to seek relief under the Act, but subsequently, during the pendency of that proceeding, became ineligible because he had finished serving his sentence. For reasons that will become clear, *Obomighie* bears closer scrutiny.

Obomighie had been convicted of assault in the second degree and sentenced to a term of eighteen months' imprisonment, all of which was suspended in favor of eighteen months' supervised probation. *Id.* at 710. While on probation, he filed a postconviction petition, but, before a hearing could be scheduled and his petition heard, Obomighie completed serving his sentence. *Id.* The postconviction court subsequently conducted a hearing and "entered an order dismissing the case for want of jurisdiction because Obomighie was no longer on probation." *Id.*

He filed an application for leave to appeal from that ruling, which this Court granted, and, thereafter, we affirmed the postconviction court's order, dismissing Obomighie's petition for lack of jurisdiction. Especially pertinent here, we noted that the "apparent conflict" between CP § 7-101, "which limits the scope of the title, and the jurisdiction of the circuit court, to persons imprisoned or on parole or probation," and CP § 7-102,[7] which (subject to the ten-year statute of limitations, CP § 7-103), "on its face, permits initiating"

---

[7] CP § 7-102(a) provides in pertinent part that, subject to various enumerated conditions (including the ten-year statute of limitations in CP § 7-103), "a convicted person may begin a proceeding under this title in the circuit court for the county in which the conviction took place at any time," provided that his claims are cognizable under the statute.

a postconviction proceeding "at any time," was resolved by the Court of Appeals in *McMannis*,[8] which held, in effect, that the "custody" requirement of CP § 7-101 takes precedence over CP § 7-102. *Obomighie*, 170 Md. App. at 712. That is to say, "*McMannis* makes it clear that petitions may be 'filed at any time,'" but "only by persons who are either confined, or on parole or probation." *Id.* at 712-13. And that is true despite the fact that the purpose of the Maryland Uniform Postconviction Procedure Act is remedial, *Douglas v. State*, 423 Md. 156, 175 (2011); in other words, the remedies afforded by that Act are expressly limited to those who satisfy the "custody" requirement.[9]

In the instant case, we must resolve a different apparent conflict regarding which statute (CP § 7-101 or CP § 7-109) governs appeals in postconviction proceedings. The latter statute provides in pertinent part:

> (a) Within 30 days after the court passes an order in accordance with this subtitle, a person aggrieved by the order, including the Attorney General and a State's Attorney, may apply to the Court of Special Appeals for leave to appeal the order.

---

[8] *McMannis* interpreted Maryland Code (1957, 1982 Repl. Vol., 1987 Cum. Supp.), Art. 27, § 645A, the statutory predecessor to the current Title 7 of the Criminal Procedure Article, but the specific provisions at issue are substantially similar. In fact, the only significant substantive difference between the 1987 version of the Act and the present one is that the former was *less* restrictive of a petitioner's right to file, as it lacked the ten-year statute of limitations in the present statute, which was enacted in 1995. 1995 Md. Laws, ch. 258.

[9] Indeed, the *Douglas* Court acknowledged that, although the Maryland Uniform Postconviction Procedure Act has a remedial purpose, there are circumstances for which it does not provide a remedy. *Douglas v. State*, 423 Md. 156, 175 (2011). We think that the "custody" requirement delineates some of those circumstances.

7

According to Kranz, this provision confers appellate jurisdiction upon this Court, regardless of whether or not he was in custody, at the time we purported to grant his application for leave to appeal, so long as he was in custody when the circuit court ruled on his postconviction petition. We disagree.

For the same reason that *McMannis* and *Obomighie* held that the "custody" requirement of CP § 7-101 takes precedence over the filing provisions of CP § 7-102, we conclude that the "custody" requirement must also take precedence over the appeals provisions of CP § 7-109. That is because CP § 7-101 states, without qualification, that "[t]his title applies to a person convicted in any court in the State who is" in "custody," whether incarcerated or on parole or probation. "This title," of course, refers to the entirety of Title 7 of the Criminal Procedure Article (that is, the Maryland Uniform Postconviction Procedure Act), including the appeals provisions of CP § 7-109.

To be eligible for relief under Title 7, the convicted person must, as we explained in *Obomighie*, be **presently** either incarcerated or on parole or probation, because CP § 7-101 "uses the present tense when it states that '[t]his title applies to a person . . . who **is** . . . on parole or probation.'" 170 Md. App. at 711 (emphasis added). And, concomitantly, as we further explained, the language, in CP § 7-101, setting forth those to whom the Act applies, "is equivalent, under the doctrine of *expressio unius*, to saying that people who do not meet [the 'custody' requirement] are ineligible" for postconviction relief "because they are outside the scope of the statute." *Id.*

Throughout the time period during which Kranz filed his postconviction petition, the circuit court ruled on that petition, and Kranz filed an application for leave to appeal

8

from the circuit court's ruling, Kranz was in "custody" within the meaning of the Maryland Postconviction Procedure Act. However, during the pendency of his application for leave to appeal, Kranz completed serving his sentence, thereby attaining the status of a person who is "ineligible" for postconviction relief because he is "outside the scope of the statute." *Id.* For the same reason that the change in Obomighie's status, during the pendency of his postconviction petition, from a person in "custody" to one no longer in "custody," divested the circuit court of jurisdiction to rule on the petition in that case, *id.* at 713, the change in Kranz's status, during the pendency of his application for leave to appeal, from a person in "custody" to one no longer in "custody," divested us of appellate jurisdiction. We, therefore, are constrained to grant the State's motion to dismiss this appeal.

**APPEAL DISMISSED. COSTS TO BE DIVIDED EQUALLY BETWEEN THE APPELLANT AND CECIL COUNTY.**

9