*William Louis Kranz v. State of Maryland*, No. 63, September Term, 2017

**CRIMINAL PROCEDURE — MARYLAND UNIFORM POSTCONVICTION PROCEDURE ACT** — Jurisdiction under the Maryland Uniform Postconviction Procedure Act, Maryland Code Annotated, Criminal Procedure §§ 7-101 to 7-109, is determined upon the filing of a petition for post-conviction relief and is not defeated upon the release of a petitioner from custody prior to the completion of appellate review, if any. The Court of Special Appeals therefore was not divested of jurisdiction to consider the merits of Petitioner's petition for post-conviction relief after Petitioner completed his sentence, including probation.

Circuit Court for Cecil County
Case No. 07-K-06-000806
Argued:  March 2, 2018

IN THE COURT OF APPEALS
OF MARYLAND

No. 63

September Term, 2017

_____

WILLIAM LOUIS KRANZ

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Barbera, C.J.
Hotten, J., dissents.

_____

Filed: June 21, 2018

We consider in this case whether a trial court or, as here, an appellate court is divested of jurisdiction over a timely-filed petition for post-conviction relief if, during litigation of the petition, the petitioner is no longer "in custody" for purposes of the Maryland Uniform Postconviction Procedure Act ("UPPA"), Maryland Code Annotated, Criminal Procedure ("CP") §§ 7-101 to 7-109. We hold that jurisdiction under the UPPA is determined upon the filing of the petition and, barring a procedural default by the petitioner, is not defeated upon the petitioner's release from custody prior to completion of full review, including any appellate review, of the case. We therefore reverse the judgment of the Court of Special Appeals, which came to the opposite conclusion.

## I.

### Background and Procedural History

Following a jury trial in the Circuit Court for Cecil County, Petitioner William Kranz was convicted of two counts each of first-degree assault and reckless endangerment. On July 31, 2009, the court sentenced Petitioner to ten years' imprisonment, five of which were suspended, and three years' supervised probation. On direct appeal, the Court of Special Appeals affirmed the judgment of conviction. *Kranz v. State*, No. 1548 (Md. Ct. Spec. App. Nov. 9, 2010), *cert. denied*, 418 Md. 191 (2011).

On February 17, 2012, Petitioner filed a timely petition for post-conviction relief.[1] He contended that the State had committed a violation under *Brady v. Maryland*, 373 U.S.

---

[1] Petitioner filed the petition within ten years following imposition of his sentence, as required by the UPPA without the need to show "extraordinary cause." CP § 7-103(b) ("Unless extraordinary cause is shown, a petition under this subtitle may not be filed more than 10 years after the sentence was imposed.").

83 (1963), entitling him to a new trial. Following denial of relief by the post-conviction court, Petitioner filed, on June 19, 2013, an application for leave to appeal. On April 7, 2015, Petitioner completed his sentence, including the three-year probationary period.

On August 31, 2016, more than three years after Petitioner filed the application for leave to appeal, the Court of Special Appeals granted the application and placed the case on its regular appeals docket. Petitioner briefed the merits of his claim that the State had committed a *Brady* violation. The State, in addition to responding to the merits of that claim, included a motion to dismiss the appeal. In support of dismissal, the State made two arguments: First, Petitioner was no longer incarcerated, on parole, or on probation, and therefore was not "in custody" for purposes of CP § 7-101 of the UPPA, rendering the case moot; second, Petitioner's loss of "in-custody" status divested the Court of Special Appeals of jurisdiction to consider the appeal.

The Court of Special Appeals issued a reported opinion granting the State's motion to dismiss the appeal. *Kranz v. State*, 233 Md. App. 600 (2017). The intermediate appellate court opted not to address the State's mootness argument. The court instead rested its dismissal of the appeal on its interpretation of the UPPA, agreeing with the State that the court lost jurisdiction to entertain the appeal once Petitioner was no longer in custody. *Id.* at 603.

In reaching that decision, the Court of Special Appeals relied principally on *McMannis v. State*, 311 Md. 534 (1988), and *Obomighie v. State*, 170 Md. App. 708 (2006). *Kranz*, 233 Md. App. at 607–10. We shall discuss both cases in detail below. It is enough to note at this point that each court—this Court in *McMannis* and the Court of Special

2

Appeals in *Obomighie*—held that full expiration of the petitioners' sentences divested the court of jurisdiction. *See McMannis*, 311 Md. at 536; *Obomighie*, 170 Md. App. at 710. In light of those decisions, the Court of Special Appeals held in the present case that it was divested of jurisdiction when Petitioner completed his period of probation. 233 Md. App. at 610.

Upon the Court of Special Appeals' dismissal of the appeal, Petitioner sought further review in this Court. We issued a writ of certiorari to consider whether the full expiration of a petitioner's sentence during the litigation of a timely-filed post-conviction petition divests the courts of jurisdiction over the action. *Kranz v. State*, 456 Md. 254 (2017).

## II.

### The Parties' Contentions

Petitioner argues that appellate courts retain jurisdiction to review petitions for post-conviction relief, even if the petitioner is no longer in custody at the time of review, so long as the petitioner filed the petition while "in custody," as that term is employed in the UPPA. Such a rule, in Petitioner's view, is consistent with the holding of this Court in *McMannis v. State*, 311 Md. 534 (1988), is supported by the United States Supreme Court's holding in *Carafas v. LaVallee*, 391 U.S. 234 (1968), and would harmonize the various provisions of the UPPA.

The State disagrees not only with Petitioner's read of the UPPA but also his assessment of the impact of *McMannis* and *Carafas*. The State also looks to *Obomighie v. State*, 170 Md. App. 708 (2006), upon which the Court of Special Appeals relied in

3

deciding the case at bar. Before considering the parties' respective views of those three cases, we pause to summarize them. We also refer to *Parker v. Ellis*, 362 U.S. 574 (1960), a case that preceded *Carafas* and informed the Supreme Court's decision in that case.

*Carafas*

We begin with *Carafas*. Petitioner James Carafas was tried in a New York state court, convicted of certain crimes, and sentenced to a term of incarceration. 391 U.S. at 235. While incarcerated, he pursued a direct appeal and state court collateral review, without success, *id*. at 235–36, then filed a federal habeas corpus petition under 28 U.S.C. § 2254, *id*. at 236. The federal district court dismissed the petition on the merits, and the Court of Appeals for the Second Circuit affirmed the dismissal. Carafas then filed a petition for writ of certiorari in the United States Supreme Court. The Supreme Court granted the petition and issued the writ on October 16, 1967. By then, Carafas had served his sentence and, as of March 6, 1967, was no longer on parole. *Id*.

New York argued that the case was moot because Carafas, having fully served his sentence, no longer was eligible for habeas corpus relief. For that proposition, New York evidently relied on a per curiam opinion of the Court, *Parker v. Ellis*, 362 U.S. 574 (1960). That case involved a federal habeas corpus petition brought by Parker, who was then serving a sentence for a conviction in a Texas state court. *Id*. at 574. The federal district court dismissed the petition, and the Court of Appeals for the Fifth Circuit affirmed. *Id*. The Supreme Court granted Parker's petition for writ of certiorari, but before the case could be heard, Parker completed his sentence and was released from prison. *Id*. at 574–75.

4

The *Parker* Court held that the expiration of the petitioner's sentence rendered the case moot, leaving the Court "without jurisdiction to deal with the merits of petitioner's claim." *Id*. Over a vigorous dissent by Chief Justice Warren, joined by Justices Black, Douglas, and Brennan, the Court remanded the case to the Court of Appeals with the direction "to vacate its judgment and to direct the District Court to vacate its order and dismiss the application." *Id*. at 576. Chief Justice Warren reasoned that the majority too narrowly construed the text and purpose of the federal habeas statute, ignoring not only the spirit of the "Great Writ" but its broad statutory language to grant relief "as law and justice require." *Id*. at 582–86 (dissenting opinion) (quoting 28 U.S.C. § 2243). The inequities highlighted in the *Parker* dissent would frame the rationale of a unanimous Court eight years later in *Carafas*.

In *Carafas*, the Supreme Court first rejected New York's claim that the case was moot. 391 U.S. at 237. The Court noted that because of his conviction, Carafas "cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror." *Id*. (footnotes omitted). Given those "'disabilities or burdens [that] may flow from' petitioner's conviction, he has 'a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him.'" *Id*. (quoting *Fiswick v. United States*, 329 U.S. 211, 222 (1946)).

New York further argued that because appellate review had not yet concluded, Carafas's release from any form of custody before securing Supreme Court review of his case divested the Supreme Court of jurisdiction to address the merits of his claim. *Id*. at

5

238.  The Court rejected that argument as well.  *Id.*  The Court accepted that Carafas was no longer in custody as defined by the federal habeas statute.  The Court nonetheless concluded that the legislative history of that statute,[2] coupled with its provision directing courts to "dispose of the matter as law and justice require," 28 U.S.C. § 2243, contemplate relief "other than immediate release from physical custody."  391 U.S. at 238–39.  The Court noted, too, that Carafas had endured lengthy delays in obtaining justice and "should not be thwarted now and required to bear the consequences of [an] assertedly unlawful conviction simply because the path has been so long that he has served his sentence."  *Id.* at 239–40.

Instructive for our purposes, the holding of *Carafas* is not based on or limited to the facts presented in that case.  The holding of *Carafas* is much broader, establishing that once federal jurisdiction attaches by filing a habeas petition, the federal trial and appellate courts retain jurisdiction to entertain the petition, even if at some point during the litigation the petitioner is no longer "in custody" for purposes of that statute.  *Id.* at 238.

*McMannis*

This Court relied to a certain extent on *Carafas* in deciding *McMannis*.  In 1970, McMannis pled guilty to charges of felony storehouse breaking and theft.  311 Md. at 536.  He completed the entirety of his sentence, including a period of probation, and sometime later, traveled to West Virginia.  *Id.* at 536–37.  There, McMannis, over the span of several years, was charged and convicted of various separate crimes.  *Id.* at 537.  He eventually

---

[2]  Apparently, the *Carafas* Court reasoned that the 1966 amendments to the statute contemplated this expansive relief.  *See* 391 U.S. at 239.

was sentenced, based in part on a West Virginia conviction of sexual assault, to life imprisonment under West Virginia's recidivist statute. West Virginia used McMannis's Maryland conviction as "a necessary predicate" for his enhanced sentence. *Id*. at 537–38.

McMannis attempted to have the West Virginia sentence reduced by challenging the validity of the earlier Maryland conviction. *Id*. at 535–36. He filed a petition for post-conviction relief in a Maryland circuit court under Maryland Code Annotated, Article 27, §645A—the predecessor to the UPPA—and prevailed on the merits of the petition. The Court of Special Appeals reversed, holding that the case was moot. *Id*. at 536.

This Court affirmed the intermediate appellate court, though on different grounds. *Id*. We looked to *Carafas* and, as the Supreme Court had done, held that McMannis's case was not moot. We reasoned that "[i]f Petitioner is correct in his assertion that his guilty plea in Maryland in 1970 was not knowing and voluntary, it is clear that he suffers anew from that constitutional infirmity by the imposition of an enhanced sentence in West Virginia that is dependent upon the earlier [Maryland] conviction." *Id*. at 538–39 (citing *Carafas*, 391 U.S. at 237–38).

We then turned to the State's alternative argument that the post-conviction court had no jurisdiction to entertain McMannis's petition because at the time of filing, he was no longer in custody for purposes of the post-conviction statute. *Id*. at 539. That argument was based on the text of then-Article 27, § 645A(a), the predecessor statute to CP §§ 7-101 and 7-102.[3] Section 645A(a) provided that "[a]ny person convicted of a crime and either

---

[3] Subsection 645A(a)(1) read, in pertinent part:
(a) *Right to institute proceeding to set aside or correct sentence; time of filing*

7

incarcerated under sentence of . . . imprisonment or on parole or probation . . . may institute a proceeding under this subtitle." *See McMannis*, 311 Md. at 539; *see also id*. (referring to that portion of § 645A(a) as the "'custody' requirement"). McMannis argued in response that, notwithstanding he was not in custody when he filed the petition, his petition was timely under a separate provision of the post-conviction statute—§ 645A(e), which allowed a petition to be filed "at any time."[4]  311 Md. at 539–40.

This Court rejected McMannis's argument, concluding that the custody requirement in § 645A(a) was "jurisdictional" and therefore "supersede[d]" the language in § 645A(e)

---

*initial proceeding.* — (1) Subject to the provisions of paragraphs (2) and (3) of this subsection, any person convicted of a crime and either incarcerated under sentence of death or imprisonment or on parole or probation . . . may institute a proceeding under this subtitle in the circuit court for the county to set aside or correct the sentence[.]

Subsection 645A(a)(2) provided that only one petition may be filed and, "[u]nless extraordinary cause is shown," may not be filed more than ten years from the imposition of sentence. The substance of former § 645A(a)(2) can now be found in CP § 7-103(b).

Subsection (a)(3) generally provided for the time within which a petition may be filed in a death penalty case.   The substance of former § 645A(a)(3) is not addressed in the present version of the UPPA, as Maryland abolished the death penalty in 2013. 2013 Md. Laws 2298 (Vol. III, Ch. 156, S.B. 276).

Each provision pertinent here that was housed in either § 645A or § 645J of Article 27 now resides in subtitle 1 of Title 7. CP §§ 7-101 to 7-109. The Revisor's Notes accompanying the newly codified Title 7 of the Criminal Procedure Article state that all sections were recodified without substantive change.

[4]  In 1995, the General Assembly amended § 645A(a) to add subsection (2)(ii), which reads: "[A] petition under this subtitle may not be filed later than 10 years from the imposition of sentence." 1995 Md. Laws 2091, 2092 (Vol. III, Ch. 258, H.B. 409).  For reasons unknown, the General Assembly retained the provision in Art. 27, § 645A(e) allowing a petition to be filed "at any time" and kept this same language in CP § 7-102(a). Section § 7-103(b) of the Criminal Procedure Article, like its predecessor provision, § 645A(a)(2)(ii), requires petitioners to file within ten years of the imposition of sentence. *See supra* note 1.

8

that permitted the filing of a post-conviction petition "at any time." *Id*. at 539–41. We noted that while a petition could be "filed at any time," the petitioner must be in custody at the time of filing. *Id*. at 541. Given McMannis was not in custody when he filed the petition, this Court held that the circuit court lacked jurisdiction to entertain it. *Id*. at 536.

*Obomighie*

Unlike the petitioner in *McMannis*, petitioner Obomighie filed his post-conviction petition while in custody but was released from custody before the circuit court held a hearing on the petition. 170 Md. App. at 709–10. The circuit court determined that, because Obomighie was no longer "in custody," the court was divested of jurisdiction over the matter. *Id*. Accordingly, the circuit court dismissed the petition. *Id*. The Court of Special Appeals affirmed. *Id*. at 710.

The Court of Special Appeals concluded that the General Assembly's use of the present tense in CP § 7-101 in the phrase "[t]his title applies to a person . . . who *is*" in custody implies that a person must remain in custody throughout the entirety of the proceedings. *Id*. at 711 (quoting CP § 7-101). The Court of Special Appeals reasoned that this phrase in CP § 7-101 precludes post-conviction relief for those petitioners who at some point after filing lose "in-custody" status. In the view of the *Obomighie* court, the "custody requirement"—which the *McMannis* Court had described as "jurisdictional," 311 Md. at 539—"circumscribes the period during which post-conviction relief may be granted notwithstanding the right to initiate a proceeding seeking such relief 'at any time,'" 170 Md. App. at 712. Consequently, the intermediate appellate court held that Obomighie's

9

"right to seek relief under the UPPA expired simultaneously with the termination of his probation." *Id*. at 713.

*The Parties' Respective Views of the UPPA*<br>*in Light of* Carafas, McMannis, *and* Obomighie

*Petitioner's Perspective*

Petitioner argues here that *Obomighie* was wrongly decided and *McMannis* should stand, although it contains dicta that requires clarification. Petitioner points out what he sees as a fundamental factual distinction between the two cases: Obomighie was in custody when he filed his petition for post-conviction relief, and McMannis was not. As a consequence, Petitioner argues, only Obomighie, but not McMannis, satisfied the in-custody "jurisdictional" requirement of the post-conviction statute. In Petitioner's view, the substantively identical language in Article 27, § 645A(a) that is now CP § 7-101, when read in conjunction with other provisions of the post-conviction statute, dictates that a court's jurisdiction over a post-conviction petition is controlled by the time of filing. Petitioner directs us to the holding of the *McMannis* Court: "McMannis was not in the custody of the State of Maryland within the meaning of [former] Art. 27, § 645A(a) when this petition was filed, and consequently the Circuit Court for Allegany County was without jurisdiction to entertain the claim for relief under the Post Conviction Procedure Act." 311 Md. at 547.

As Petitioner sees it, the Court of Special Appeals erred in *Obomighie* by drawing upon certain dicta in *McMannis* to reason that courts would be divested of jurisdiction to entertain an otherwise properly filed post-conviction petition when, at some point after

10

filing, the petitioner was no longer in custody. For that proposition, Petitioner points to several provisions of the UPPA. He asks us to read them together so that no language or provision is rendered nugatory or contradictory to other provisions. He reasons as follows: CP § 7-101 establishes that the UPPA "applies to a person convicted in any court in the State who is: (1) confined under sentence of imprisonment; or (2) on parole or probation." CP § 7-102(a), in turn, provides that a person who satisfies the custody requirement "may begin a proceeding under this title in the circuit court for the county in which the conviction took place . . . if the person claims" a constitutional violation in the conviction or sentence; lack of jurisdiction over the sentence; an illegal sentence; or that the sentence is otherwise subject to collateral attack. There may be only one petition, CP § 7-103(a), which may be filed "at any time," CP § 7-102(a), so long as the petitioner satisfies the custody requirement of CP § 7-101 and, absent "extraordinary cause," the petition is filed within ten years from the imposition of sentence, CP § 7-103(b).

Petitioner also views CP § 7-109 as important to a proper interpretation of the UPPA. That section addresses appellate review of the post-conviction court's disposition of the petition and provides in subsection (b)(3)(ii) that "[i]f the application for leave to appeal is granted," "the Court of Special Appeals may [] affirm, reverse, or modify the order appealed from; or [] remand the case for further proceedings." Petitioner argues that "[n]othing in the language of § 7-109[] suggests that the right to apply for leave to appeal [and, if the application is granted, the right to pursue the appeal on its merits] is limited to convicted persons who are still in custody" when they pursue such relief.

11

Petitioner contests the Court of Special Appeals' analysis of the interplay between CP §§ 7-101 and 7-109: "The reasoning of the Court of Special Appeals, *i.e.*, 'that the custody requirement of CP § 7-101 takes precedence over the appeals provisions of CP § 7-109,' overlooks the presumption that the General Assembly 'intends its enactments to operate together as a consistent and harmonious body of law.'" *State v. Bey*, 452 Md. 255, 266 (2017) (internal quotation marks and brackets omitted). In Petitioner's view, those sections, as well as CP §§ 7-102 and 7-103, read together and in harmony with one another, reflect the legislative purpose that, upon satisfaction of any conditions or limitations set forth in each relevant section or subsection, a post-conviction petitioner is entitled to pursue litigation of the petition until final disposition, including any appellate review of an adverse decision by a lower court.

Petitioner further asserts that the UPPA is consistent in purpose with the federal habeas statute, 28 U.S.C. § 2254. He argues that the apparent legislative purpose behind the UPPA is much like the purpose of the federal legislative scheme. He looks to the Supreme Court's conclusion in *Carafas* that, "under the statutory scheme, once federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." 391 U.S. at 238. Petitioner maintains that the holding of *Carafas* provides a guidepost as we consider the legislative purpose behind the UPPA.

Petitioner also asks this Court to bear in mind that the UPPA, as a remedial statute, *Douglas v. State*, 423 Md. 156, 175 (2011), is to be "construed liberally in favor of claimants seeking its protection," *Hass v. Lockheed Martin Corp.*, 396 Md. 469, 495

12

(2007). Petitioner contends that his proposed construction of the UPPA furthers this interpretive canon.

*The State's Perspective*

The State urges affirmance of the opinion of the Court of Special Appeals. The State asserts two grounds, one of which—that the appeal is moot—was not considered by the intermediate appellate court. The State argues that Petitioner's case is moot because he has been released from custody. To support this contention, the State cites cases in which this Court held that petitions for post-conviction relief are moot where the petitioner was released from custody prior to the completion of appellate proceedings. *See, e.g.*, *Tucker v. Warden*, 240 Md. 738 (1966) (per curiam); *Noble v. Warden*, 221 Md. 581 (1959) (per curiam). For reasons we shall explain, we dispose of that argument in short order.

The State's second ground for affirmance, to which it devotes much of its attention, adheres to the intermediate appellate court's analysis. The State contends that the Court of Special Appeals properly determined, under the plain language of the UPPA, that it was divested of jurisdiction to consider Petitioner's claim. The State asserts that, by its terms, the UPPA "applies to a person convicted in any court in the State who is: (1) confined under sentence of imprisonment; or (2) on parole or probation." CP § 7-101. At the time of his appeal, Petitioner was no longer subject to any of these conditions—imprisonment, parole, or probation—to which the remedies under the UPPA apply. Consequently, on its face, the statutory language excludes Petitioner from post-conviction relief, and the intermediate appellate court correctly concluded as much.

The State further argues that its plain language reading of the UPPA is consistent with the legislative history of the statute and case law interpreting the UPPA throughout its development. The State notes that Maryland's first post-conviction statute was codified in 1958 and sought to create a single statutory procedure for collateral attacks to replace the common law writs of habeas corpus and error *coram nobis* when a petitioner was in custody, *see State v. D'Onofrio*, 221 Md. 20, 28–29 (1959), while retaining the common law writs as a means for a petitioner no longer in custody to challenge collaterally a criminal judgment, *see Ruby v. State*, 353 Md. 100, 106 (1999). *See also Skok v. State*, 361 Md. 52, 78 (2000) ("[T]here should be a remedy for a convicted person who is not incarcerated and not on parole or probation . . . . Such a person should be able to file a motion for coram nobis relief[.]").[5]

The State also points out that, although the National Conference of Commissioners on Uniform State Laws released versions of the Uniform Post-Conviction Procedure Act in 1966 and 1980, neither of which retained a custody requirement, Maryland did not adopt either of the revised versions. Instead, the custody requirement has survived in substantially the same form, even through the 2001 recodification of Article 27 into the Criminal Procedure Article. Moreover, the State claims, this Court has consistently—and from the outset—dismissed applications for leave to appeal where, as here, the applicant

---

[5] We do not address, beyond this note, the State's argument that the availability of *coram nobis* relief should play a role in our interpretation of the UPPA. It is enough to say here that the availability of that common law writ does not bear on the interpretive task before us, which is to discern the reach of the UPPA.

14

had been released from custody. *See, e.g.*, *Tucker*, 240 Md. 738; *Spencer v. Warden*, 223 Md. 678 (1960); *Noble*, 221 Md. 581.

## IV.

## Analysis

### *Mootness*

"Ordinarily, a case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *McMannis v. State*, 311 Md. 534, 538 (1988). The State contends that Petitioner's post-conviction petition is no longer "live" for consideration by the Court of Special Appeals, given his release from custody prior to the conclusion of the appellate proceedings. In *McMannis*, this Court rejected a similar claim of mootness, *id* at 538–39, and, relying on the reasoning of that Court, we do likewise here.

The *McMannis* Court looked to the Supreme Court's decision in *Carafas* for guidance. "The United States Supreme Court has held that a federal habeas corpus proceeding is not necessarily rendered moot by a petitioner's release from custody, and that where the conviction results in collateral consequences in the form of substantial civil penalties, the claim is not moot." *McMannis*, 311 Md. at 539 (citing *Carafas*, 391 U.S. at 237–38). Significant collateral consequences flow from Petitioner's felony convictions for first-degree assault. For example, he is disqualified from jury service[6]; regulated firearm

---

[6] Md. Code Ann., Cts. & Jud. Proc. § 8-103(b)(4).

15

possession[7]; certain employment opportunities[8]; and military service.[9] Despite Petitioner's release from custody, he now suffers and will continue to suffer those consequences. *See id.* We hold that Petitioner's claim is not moot.

*Jurisdiction under the UPPA*

The ultimate question before us is whether the Court of Special Appeals properly dismissed Petitioner's case because it was divested of jurisdiction at the moment Petitioner was no longer "in custody" for purposes of the UPPA. For reasons that follow, we conclude that jurisdiction under the UPPA is determined upon the filing of a petition for post-conviction relief and, absent a procedural default by the petitioner at the outset or any time thereafter, is not defeated upon the release of the petitioner from custody prior to completion of any appellate review. To answer that question, we must look to the UPPA. We rely on the rules of statutory construction in our analysis.

The cardinal rule of statutory construction is to ascertain and effectuate the General Assembly's intent. "[O]ur primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." *Evans v. State*, 420 Md. 391, 400 (2011) (quoting *Ray v. State*, 410 Md. 384, 404 (2009)). The starting point of any statutory

---

[7] Md. Code Ann., Pub. Safety § 5-133(b)(1).

[8] S*ee* Dep't Legis. Servs., *Collateral Consequences of a Criminal Conviction* 23–32 (2009), https://perma.cc/ZE5G-YPEQ (last visited June 18, 2018) (listing the "Professional Licensure Felony Conviction Restrictions in Maryland").

[9] 10 U.S.C. § 504(a).

analysis is the plain language of the statute, *Phillips v. State*, 451 Md. 180, 196 (2017), viewed in the "context of the statutory scheme to which it belongs," *Brown v. State*, 454 Md. 546, 551 (2017). We presume, moreover, that the General Assembly "intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." *State v. Bey*, 452 Md. 255, 266 (2017). We do that "by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Evans*, 420 Md. at 400 (quoting *Ray*, 410 Md. at 405).

It is also settled that when a statute's language is "clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends." *Phillips*, 451 Md. at 197 (quoting *Douglas v. State*, 423 Md. 156, 178 (2011)). Yet, it is equally "well settled that the purpose of the plain meaning rule is to ascertain and carry out the real legislative intent." *Allen v. State*, 402 Md. 59, 73 (2007). We have emphasized that "[w]hat we are engaged in is the divination of legislative purpose or goal. Indeed, . . . the plain-meaning rule is not a complete, all-sufficient rule for ascertaining a legislative intention. The meaning of the plainest language is controlled by the context in which it appears." *Id.* at 74 (quoting *Kaczorowski v. Mayor & City Council of Balt.*, 309 Md. 505, 514 (1987)). To that end, "we may find useful the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments." *Evans*, 420 Md. at 400 (quoting *Ray*, 410 Md. at 405).

17

We begin with the recognition that, read alone, CP § 7-101 could be interpreted as the Court of Special Appeals did here when it dismissed Petitioner's appeal upon his release from custody. But that interpretation of CP § 7-101, while perhaps conforming, at least superficially, to the plain language of CP § 7-101, ignores the requirement that statutory construction must be reasonable and consistent with the overall legislative scheme and must not render any other provision of the scheme meaningless or nugatory, much less "absurd, illogical, or incompatible with common sense." *State v. Neiswanger Mgmt. Servs., LLC*, 457 Md. 441, 459 (2018) (quoting *Lockshin v. Semsker*, 412 Md. 257, 276 (2010)). It defies logic to conclude that the General Assembly intended that a circuit court or, as here, an appellate court would lose jurisdiction to entertain the merits of a properly filed post-conviction petition solely because at some point during the still-live action, the petitioner's status changes from "in custody" to "not in custody." Indeed, such an outcome borders on the absurd.

To best understand CP § 7-101, we must read it in the context of the overall legislative scheme that is the UPPA. That is particularly so, given the 2001 recodification of former Article 27, §§ 645A–J to what is now the UPPA. The Revisor's Notes to each of the new sections in Subtitle 1 of the Criminal Procedure Article make clear that they were recodified without substantive change. One need only compare the predecessor and current versions of the post-conviction statute to appreciate that, in the process of recodification, among other non-substantive changes, the text of § 645A was split into various subsections that are now found within Subtitle 1 of the UPPA. Though one might be tempted to read each of the various sections of Subtitle 1 in isolation, the Revisor's

18

Notes imply the opposite: Each section should be read in conjunction with the others to extract a meaning that harmonizes the various provisions. Certainly, any reader of the lengthy paragraph that was former § 645A(a) would have been inclined to do the same.

When we read CP § 7-101 not in isolation but together with other sections of Subtitle 1, we are led to conclude that Petitioner has the better part of the argument. The "custody requirement" set forth in CP § 7-101—"This title applies to a person convicted in any court in the State who is: (1) confined under sentence of imprisonment; or (2) on parole or probation"—must be read in conjunction with CP § 7-102. That section grants a petitioner, who must then be in custody, the right to "begin a proceeding under this title in the circuit court for the county in which the conviction took place at any time." The petitioner must comply with certain conditions that are laid out in that same section. The petitioner's claim or claims must fall within the list of those permitted by CP § 7-102(a)(1)– (4); and, as provided by CP § 7-102(b)(1) and (2), the petitioner must "seek[] to set aside or correct the judgment or sentence," and the alleged error must not have "been previously and finally litigated or waived." Sections 7-101 and 7-102 must be read together with CP § 7-103, which prescribes the number of petitions (one) and the time within which the petition must be filed (within ten years after the sentence was imposed). The remaining provisions of Subtitle 1 further address, for example, the terms "finally litigated" and "waived," CP § 7-106; provide the right to counsel and a hearing, CP § 7-108; and, of relevance here, provide the right to file an application for leave to appeal from a final circuit court order, CP § 7-109.

19

We conclude that the more reasonable construction of CP § 7-101 is to require the petitioner to be "in custody" at the time of filing and not, as the State would have it, to require the petitioner to remain in custody throughout litigation of the petition, including the appeal, if any.

We disagree with the State that even in the thirty years since *McMannis* was decided, this Court has consistently restricted post-conviction relief to those petitioners who remained in custody until full completion of litigation. For that proposition, the State cites *Ruby v. State*, 353 Md. 100, 106 n.4 (1999); *Fairbanks v. State*, 331 Md. 482, 492 n.3 (1993); and *Randall Book Corp. v. State*, 316 Md. 315, 321 (1989). Those cases do not assist the State's cause. The only mentions of the UPPA in *Ruby* and *Fairbanks* are limited to footnotes. *Ruby*, 353 Md. at 106 n.4; *Fairbanks*, 331 Md. at 492 n.3. *Ruby*, moreover, is not a post-conviction case, but rather involved the writ of error *coram nobis*. 353 Md. at 102. *Fairbanks* merely restated the holding of *McMannis* that one must be in custody at the time of filing; *Fairbanks* did not hold, as the State claims, that post-conviction relief is (or should be) limited to those in custody throughout appellate review. 331 Md. at 492 n.3.

As for *Randall Book Corp.*, under no circumstances could that case be read to require that a petitioner remain in custody throughout post-conviction proceedings. There, the petitioner's sentence was limited to the payment of fines, and we held that the predecessor to the UPPA was therefore inapposite because it "applies only to persons who are 'either incarcerated under sentence of death or imprisonment or on parole or probation.'" 316 Md. at 321 (quoting Art. 27, § 645A)(a).

20

We also find unconvincing the State's contention that the General Assembly's apparent non-responsiveness to the Uniform Law Commission's Uniform Post-Conviction Procedure Act, which eliminated the custody requirement, suggests that the General Assembly intended for petitioners to remain in custody throughout post-conviction appellate proceedings. The Revisor's Notes to the 2001 recodification of the Criminal Procedure Article reflect no such intention, and we can find no Maryland case—save *Obomighie*, which we overrule today—to support the claim.

Finally, though we are not required to duplicate here the Supreme Court's treatment of the federal habeas statute in *Cafaras*, we are persuaded nonetheless to follow it. Before the Supreme Court was the question whether the Court was divested of jurisdiction to consider the petitioner's application for writ of habeas corpus because he was released from custody before the completion of appellate review. 391 U.S. at 237. In concluding that it was not divested of jurisdiction, the Court first examined the federal habeas statute, which, like the UPPA, requires an applicant to be "in custody" at the time of filing. 28 U.S.C. § 2241(c); 391 U.S. at 238. Moreover, not unlike the reopening provision of the UPPA—CP § 7-104, which grants courts discretion to reopen a post-conviction proceeding if the court decides that the action is "in the interests of justice"—the federal habeas statute directs a court to "dispose of the matter as law and justice require," 28 U.S.C. § 2243. The Supreme Court determined that this statutory language and the legislative history of the statute contemplated relief beyond immediate release from custody. 391 U.S. at 238–39. The Court concluded that Carafas, who had suffered delays over the eight years he had been litigating his allegedly unlawful conviction, "should not be thwarted now and required

21

to bear the consequences of [an] assertedly unlawful conviction simply because the path has been so long that he has served his sentence." *Id*. at 240. In establishing that once a federal district court has jurisdiction over an application for writ of habeas corpus, jurisdiction is not defeated upon that applicant's release from custody, the Supreme Court held that Carafas was entitled to consideration of his application on its merits. *Id*. at 238–39, 242.

Like Carafas, Petitioner's path to correct an alleged injustice has been long and, so far, unfruitful. Petitioner was convicted in 2009 and, like Carafas, "has been attempting to litigate his constitutional claim ever since"—first on direct appeal and then through post-conviction relief. *Id*. at 239–40. Petitioner should not be denied full disposition of his challenge simply because, like most convicted defendants who choose to contest their judgments, he chose to seek direct appeal before a collateral attack. Nor should he be penalized by the happenstance beyond his control that his post-conviction petition lingered in the lower courts for more than five years. In the words of the Supreme Court, "[t]here is no need in the statute, the Constitution, or sound jurisprudence for denying [] petitioner his ultimate day in court." *Id*. at 239.

That we are persuaded by the reasoning underlying the *Carafas* decision is not to say, however, that our holding applies only to those who have suffered such delays. Rather, as in *Carafas*, our holding is broader: Whenever a timely petition for post-conviction relief is filed, absent the petitioner's procedural default at any point in the process, Maryland courts retain jurisdiction throughout consideration of the petition, including appellate review, notwithstanding any intervening release from custody.

22

*Clarifying* McMannis *and Overruling* Obomighie

We also take this opportunity to clarify the reach of our decision in *McMannis*. *McMannis* simply established the jurisdictional requirements of filing, which are satisfied if a petitioner is in custody at the time he or she files a petition for post-conviction relief. This Court's dicta notwithstanding, that case should not be interpreted to require custody at every stage of post-conviction proceedings or to divest a reviewing court of jurisdiction if the petitioner is released from custody. Accordingly, our holding today—that courts retain jurisdiction even if the petitioner is released from custody after filing—is not in conflict with and does not require overruling that decision.

Our holding today does mandate overruling the Court of Special Appeals' decision in *Obomighie*. Obomighie filed his petition in circuit court while on probation. Seven days later, he completed his probation, and therefore was no longer in custody, but the circuit court had not yet held a hearing on the petition. 170 Md. App. at 710. The intermediate appellate court dismissed Obomighie's petition, holding that the circuit court was divested of jurisdiction when Obomighie was released from custody. *Id.* That holding is in direct conflict with our decision today and must be overruled.

## V.

### Conclusion

For the foregoing reasons, we vacate the Court of Special Appeals' judgment dismissing the appeal and remand to that court to consider the merits of Petitioner's appeal.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED.**

23

**WE REMAND TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT.**

Circuit Court for Cecil County
Case No. 07-K-06-000806
Argued: March 2, 2018

IN THE COURT OF APPEALS

OF MARYLAND

No. 63

September Term, 2017

_____

WILLIAM LOUIS KRANZ

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Dissenting Opinion by Hotten, J.

_____

Filed: June 21, 2018

Respectfully, I dissent and would affirm the judgment of the Court of Special Appeals.

Maryland Code (2001, 2008 Repl. Vol.), § 7-101 of the Criminal Procedure Article, ("Crim. Proc.") provides:

This title applies to a person convicted in any court in this State who is:

(1) confined under sentence of imprisonment; or

(2) on parole or probation.

As the Court of Special Appeals explained, imbedded in § 7-101 is a "custody" requirement, which must first be satisfied to give an appellate court jurisdiction. As expressed by that Court:

> To be eligible for relief under Title 7, the convicted person must, as we explained in *Obomighie*, be **presently** either incarcerated or on parole or probation, because Crim. Proc. § 7-101 "uses the present tense when it states that '[t]his title applies to a person . . . who **is** . . . on parole or probation.'" 170 Md. App. [708], 711, 908 A.2d 132, [134 (2006)] (emphasis added). And, concomitantly, as we further explained, the language, in Crim. Proc. §7-101, setting forth those to whom the Act applies, "is equivalent, under the doctrine of *expressio unius*, to saying that people who do not meet [the 'custody' requirement] are ineligible" for postconviction relief "because they are outside the scope if the statute." *Id.*

*Kranz v. State*, 233 Md.App. 600, 609, 168 A.3d 986, 991 (2017).

I agree with the Court of Special Appeals that Petitioner was neither "confined under sentence of imprisonment," or "on parole or probation" during the pendency of his appeal, thereby divesting the appellate courts of jurisdiction. Accordingly, I respectfully dissent.