*Hyperheal Hyperbarics, Inc., et al. v. Eric Shapiro*, No. 42, September Term, 2024. Opinion by Gould, J.

**CORPORATIONS AND ASSOCIATIONS – SECTION 2-418**

The Supreme Court of Maryland determined that the indemnification required under subsection 2-418(d) of the Corporations and Associations Article of the Maryland Annotated Code applies when a director is sued "by reason of service" in his capacity as a director and prevails. And to determine what it means to serve in the "capacity" as a director, courts must look to subsection 2-418(a)(3), which defines "[d]irector" to include service in two distinct capacities: (1) as a director to the corporation; and (2) service to *another* entity, at the direction of the corporation, as a director, officer, partner, trustee, employee, or agent. MD. CODE ANN., CORPS. & ASS'NS ("CA") § 2-418 (2014 Repl. Vol.).

**CORPORATIONS AND ASSOCIATIONS – SECTION 2-418**

The Supreme Court of Maryland determined that the requisite nexus requirement under CA § 2-418(d)(1) is established if, regardless of their merits, any of the factual allegations, causes of action, and/or legal theories alleged or asserted by the plaintiff implicate the individual's role or status as a director.

Circuit Court for Baltimore County
Case Nos.: C-03-CV-21-000844 and
            C-03-CV-22-000090
Argued: May 6, 2025

IN THE SUPREME COURT

OF MARYLAND

No. 42

September Term, 2024

_____

HYPERHEAL HYPERBARICS, INC., et al.

v.

ERIC SHAPIRO

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Opinion by Gould, J.

_____

Filed: July 17, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Unless the corporate charter provides otherwise, section 2-418 of the Corporations and Associations Article requires a corporation to indemnify a director who prevails in a proceeding to which he was made a party "by reason of service" in that capacity. MD. CODE ANN., CORPS. & ASS'NS ("CA") § 2-418 (2014 Repl. Vol.). The issue here is how that provision is applied when a corporation unsuccessfully sues a director who also serves as an officer and employee. The circuit court determined that the statute requires indemnification only for actions taken within the scope of the director's duties to the corporation. Because the court concluded that the corporation's unsuccessful claim against the director was based solely on alleged misconduct committed in his capacity as an employee, it determined that the director was not entitled to indemnification and dismissed the director's indemnification claim on summary judgment.

The Appellate Court of Maryland disagreed and determined that the corporation's allegations implicated the director's fiduciary duties to the corporation. *Shapiro v. Hyperheal Hyperbarics, Inc.*, 263 Md. App. 424, 484 (2024). Thus, the Appellate Court reversed, holding, among other things, that the corporation's claims bore a sufficient nexus to the director's status as a director to trigger indemnification coverage under the statute. *Id.* at 497, 506.

We affirm the judgment of the Appellate Court.

**I**

**A**

In 2012, Eric Shapiro founded Hyperheal Hyperbarics, Inc. ("Hyperheal"), a medical provider offering hyperbaric oxygen therapy ("HBOT") and wound care. He

served as a director, controlled Hyperheal's day-to-day operations, and was employed as a certified HBOT technician. Relevant here, the Eighth Article of Hyperheal's Articles of Amendment and Restatement, filed November 12, 2015 (the "charter"), required Hyperheal to indemnify "all of its present and former directors and officers in connection with any proceeding . . . to the fullest extent permitted by and in accordance with the laws of the State of Maryland."

**B**

On April 26, 2018, Hyperheal sued Mr. Shapiro and others[1] in the Circuit Court for Baltimore County (the "underlying case"), alleging that Mr. Shapiro had engaged in misconduct that ultimately required Hyperheal to repay government insurers hundreds of thousands of dollars. Hyperheal asserted two causes of action against Mr. Shapiro in its amended complaint: one for "intentional misrepresentation" and the other for common law indemnification.

In general, Hyperheal alleged that: (1) Mr. Shapiro was the founder, a director, and the majority owner of Hyperheal and that he controlled the company's day-to-day operations; (2) Mr. Shapiro was also employed as a certified HBOT technician but was not a licensed physician; (3) as an HBOT technician, Mr. Shapiro was "not permitted to write a patient care plan, prescribe HBOT treatments or supervise HBOT sessions[]" and was "permitted only to administer HBOT treatments under the supervision of a licensed

---

[1] The claims against Mr. Shapiro's co-defendants are not relevant here.

physician[]"; and (4) Mr. Shapiro knew that he was not authorized to prescribe HBOT treatments.

For its intentional misrepresentation count, Hyperheal alleged that in March 2013, Mr. Shapiro "drafted a patient care plan for Patient that prescribed HBOT" even though he was not permitted to "because he is not a licensed physician and, therefore, acted outside the scope of his employment and in contravention of his fiduciary duties to Hyperheal." To conceal the absence of a physician's prescription, "Shapiro falsely asserted he received a fax referral for Patient recommending HBOT treatments."

Hyperheal further alleged that Mr. Shapiro subsequently "submitted a request to Tricare for authorization to continue Patient's HBOT treatments beyond May 26, 2013[,]" again when "Hyperheal had not received a licensed physician's HBOT prescription for Patient." When Tricare approved a second round of treatments, the authorization stated: "Patient needs continued treatment with Dr. Eric Shapiro in Cockeysville, MD." Mr. Shapiro "both supervised and administered" HBOT sessions for the patient between March 2013 and October 2014, despite not being "permitted to supervise the HBOT sessions[]" because he was not a licensed physician.

According to Hyperheal, Mr. Shapiro engaged in the alleged misconduct to increase Hyperheal's profits and therefore the income he could derive as a stockholder. Hyperheal alleged that "[a]s a shareholder and director that controlled the day-to-day operations of Hyperheal, Shapiro knew that Tricare paid Hyperheal for the unattended HBOT sessions[.]" Hyperheal alleged that Mr. Shapiro's conduct "constituted assertions of false representations of a material fact to Hyperheal and also constituted a breach of his fiduciary

3

duties owed to Hyperheal as a shareholder." And, Hyperheal alleged that its "reliance on Shapiro's actions was justified because he was a founder, shareholder, director, and owed fiduciary duties to Hyperheal, and it had no knowledge Shapiro was engaging in acts outside his employment and in breach of his fiduciary duties."

For its indemnification count, Hyperheal alleged that because of Mr. Shapiro's improper conduct, Hyperheal was entitled to reimbursement from him of the payments Hyperheal made to reimburse Tricare ($240,028.44) and to settle a *qui tam* lawsuit ($414,640.25), as well as "penalties, costs of investigation and attorneys' fees in negotiating and resolving" the billing issues with Tricare.[2]

Following a six-day jury trial in November 2021, the jury, after deliberating for less than one hour, returned a verdict in Mr. Shapiro's favor on all counts. Hyperheal did not appeal that adverse judgment.

## C

On December 10, 2021, Mr. Shapiro, through counsel, sent Hyperheal a demand letter for payment of $501,021.70 in legal costs that he had incurred in defending the underlying case. Mr. Shapiro based his demand on the charter's Eighth Article and CA § 2-418(d), both of which provide for the indemnification of directors. Hyperheal denied the request on December 23, 2021.

---

[2] Given that Hyperheal admitted it was not entitled to the payments in the first place, it is unclear why Hyperheal claimed that the reimbursement of those monies constituted damages it could seek from Mr. Shapiro.

On January 6, 2022, Mr. Shapiro filed this action in the Circuit Court for Baltimore County. Consistent with his demand letter, Mr. Shapiro's complaint invoked both the Eighth Article of the charter and CA § 2-418(d), relying solely on his status as a director.

Both parties filed competing motions for summary judgment. On March 15, 2023, the circuit court granted Hyperheal's motion and denied Mr. Shapiro's, finding "no genuine dispute of material fact that the Plaintiff's status or conduct as a corporate officer or director was not the basis of the claims asserted against him in the [underlying case]."

**D**

On October 3, 2024, in a thorough and well-reasoned opinion, the Appellate Court of Maryland reversed, holding that Hyperheal sued Mr. Shapiro "by reason of his service in his capacity as an officer and director, at least in part," because Hyperheal's allegations and claims rested in part on allegations that Mr. Shapiro breached his fiduciary duties as a director and officer. *Shapiro*, 263 Md. App. at 505-06. The Appellate Court concluded that because Mr. Shapiro was successful in defending the underlying case, the circuit court improperly granted summary judgment dismissing his claim for indemnification under CA § 2-418(d)(1). *Id.*

**E**

This Court granted Hyperheal's petition for a writ of certiorari to determine whether the Appellate Court correctly applied subsection 2-418(d). *Hyperheal Hyperbarics, Inc. v. Shapiro*, 489 Md. 328 (2025).

5

## II

## A

The interpretation of a statute is a legal issue that we review without deference. *Elsberry v. Stanley Martin Cos., LLC*, 482 Md. 159, 178 (2022). When we construe a statute, our goal is to discern the General Assembly's purpose. *Pabst Brewing Co. v. Frederick P. Winner, Ltd.*, 478 Md. 61, 75 (2022). We start with the statute's plain language, which we review in the context of the overall statutory scheme to which it belongs, including the statute's structure. *State v. Bey*, 452 Md. 255, 266 (2017) ("We . . . do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute."). Moreover, we assume that the General Assembly intends for related statutes to work harmoniously as a consistent body of law. *Kranz v. State*, 459 Md. 456, 474 (2018).

"If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resorting to other rules of construction." *Wheeling v. Selene Fin. LP*, 473 Md. 356, 377 (2021) (quoting *Lockshin v. Semsker*, 412 Md. 257, 275 (2010)). But if the statute, when read in its appropriate context, is susceptible to more than one reasonable interpretation—that is, if it's ambiguous—we can use other tools of statutory construction, including consulting the legislative history. *Elsberry*, 482 Md. at 179-81. That said, we will sometimes employ a "trust but verify" approach to statutory

6

interpretation—that is, although we trust our ability to construe unambiguous text under its plain meaning, we may seek to verify our interpretation by looking at the legislative history. *See Brutus 630, LLC v. Town of Bel Air*, 448 Md. 355, 367-68 (2016).

**B**

Our analysis turns on the text of three subsections of CA § 2-418, which provide in relevant part:

> [(a)](3) "Director" means any person who is or was a director of a corporation and any person who, while a director of a corporation, is or was serving at the request of the corporation as a director, officer, partner, trustee, employee, or agent of another foreign or domestic corporation, partnership, joint venture, trust, limited liability company, other enterprise, or employee benefit plan.
>
> * * *
>
> (b) (1) A corporation may indemnify any director made a party to any proceeding by reason of service in that capacity unless it is established that:
> > (i) The act or omission of the director was material to the matter giving rise to the proceeding; and
> > > 1. Was committed in bad faith; or
> > > 2. Was the result of active and deliberate dishonesty; or
> > (ii) The director actually received an improper personal benefit in money, property, or services; or
> > (iii) In the case of any criminal proceeding, the director had reasonable cause to believe that the act or omission was unlawful.
>
> * * *
>
> (d) Unless limited by the charter:
> > (1) A director who has been successful, on the merits or otherwise, in the defense of any proceeding referred to in subsection (b) of this section, or in the defense of any claim, issue, or matter in the proceeding, shall be indemnified against reasonable expenses incurred by the director in connection with the proceeding, claim, issue, or matter in which the director has been successful.

These provisions are designed to work together. Subsection 2-418(d)(1) provides that a director who has been successful in defense of "any proceeding referred to in subsection (b) . . . shall be indemnified against reasonable expenses[.]" To ascertain the universe of proceedings to which this mandatory indemnification applies, we must look to subsection (b), which provides indemnification for "any director made a party to any proceeding by reason of service in that capacity[.]" CA § 2-418(b)(1). Thus, the indemnification required under subsection (d) applies when a director is sued "by reason of service" in his capacity as a director and prevails. And to determine what it means to serve in the "capacity" as a director, we look to subsection (a)(3), which defines "[d]irector" to include service in two distinct capacities: (1) as a director to the corporation; and (2) service to *another* entity, at the direction of the corporation, as a director, officer, partner, trustee, employee, or agent. The phrase "that capacity" in subsection (b), which is pulled into subsection (d), refers to both distinct capacities. The Appellate Court called this the "capacity requirement," *Shapiro*, 263 Md. App. at 485, and so will we.

## C

Hyperheal contends that the capacity requirement was not met because it sued Mr. Shapiro solely for actions he took as an employee. Such actions included providing hyperbaric treatment to a patient without a prescription, submitting fraudulent or improper bills for services, and "complet[ing] medical notes for the patient identifying his 'Plan of Care[.]'" Hyperheal argues that "[n]o action taken by the Board of Directors nor an individual director was implicated in Shapiro's scheme to provide hyperbaric treatment to

8

the patient without a prescription." Thus, Hyperheal contends, the mandatory indemnification provisions were not triggered.

Mr. Shapiro counters that Hyperheal sued him for his service as a director and officer, and thus, the capacity requirement was satisfied.[3] He points out that Hyperheal's complaint emphasized his roles as director, officer, and employee and alleged that he breached fiduciary duties arising from those positions. Mr. Shapiro maintains that the statutory language requires only that he was sued "by reason of" his service as a director or officer, not that every aspect of his conduct involved directorial duties. He argues that Hyperheal's allegations concerning his breach of fiduciary duties, control of day-to-day operations, and motivation to generate revenue as an owner establish the requisite connection to his directorial capacity.[4]

---

[3] In this Court, Mr. Shapiro argues that he is entitled to mandatory indemnification as a director and officer under the mandatory indemnification rights of section 2-418, and as a director, officer, and employee under the Eighth Article of the charter. In his complaint, however, he invoked only the indemnification rights of directors. We will limit the scope of our analysis accordingly.

[4] Mr. Shapiro also argues that, construing the Eighth Article of the charter and section 2-418 together, he is entitled to indemnification for actions he undertook as an employee, even in the absence of a nexus to his role as a director. Mr. Shapiro starts with the premise that the Eighth Article requires Hyperheal to indemnify directors and officers to the extent *permitted* by section 2-418. He points out that subsection (j)(2) permits a corporation to indemnify employees unless the charter provides otherwise. And because Hyperheal's charter contains no such prohibition, officers and directors who serve as employees are *entitled* under the Eighth Article to the indemnification *permitted* under subsection (j)(2). Mr. Shapiro contends that because he served as a director and employee, there is no need to parse out whether his specific actions were undertaken in one capacity or the other.

The Appellate Court disagreed with Mr. Shapiro because it concluded that subsection (j)(2) "is an 'opt-in' provision for employee indemnification[]" and that the

9

**D**

This Court addressed the capacity requirement in *Kramer v. Liberty Property Trust*, 408 Md. 1 (2009). In *Kramer*, a trustee of a real estate investment trust ("REIT") sought advancement of expenses under its bylaws, which incorporated the language and requirements of section 2-418, including the capacity requirement that one be "made a party to a proceeding by reason of such status[.]" *Id.* at 9, 17 (emphasis omitted). Thus, the trustee's entitlement to advancement "depend[ed] upon two things: first, that he incurred his expenses in connection with a proceeding under § 2-418; and second, that he was made a party to the proceeding by reason of his status as a trustee of" the REIT. *Id.* at 17-18 (citation modified). We explained that "[f]or a proceeding to be by reason of one's official status, there must exist a nexus or causal connection between the underlying proceeding and one's official status." *Id.* at 29 (citation modified). As an example, we noted that "this connection is established if the corporate powers were used or necessary for the commission of the alleged misconduct giving rise to the proceeding." *Id.* (citation modified).

---

Eighth Article of the charter "does not extend to employees." *Shapiro*, 263 Md. App. at 487-88. In other words, because neither the charter nor section 2-418 required Hyperheal to indemnify employees, the Appellate Court concluded that Mr. Shapiro was not entitled to indemnification for actions taken as an employee.

On this one discrete issue, we disagree with the Appellate Court. As we read the charter and subsection 2-418(d)(2), although being an employee without more does not entitle one to indemnification under the charter, Hyperheal's charter does confer indemnification rights on a small subset of employees—those who also serve as a director or officer. This minor disagreement with the Appellate Court does not affect the outcome here.

This case is our first opportunity to explore the nexus requirement from *Kramer* when a director prevails in a lawsuit filed by the corporation. But the different context does not change the analysis. At bottom, the inquiry must focus the plaintiff's attempt to use an individual's status as a director as a basis, in whole or in part, to hold that individual liable for one or more of the claims asserted. Accordingly, the capacity requirement under subsection 2-418(d)(1) is satisfied—that is, the requisite nexus is established— if, regardless of their merits, any of the factual allegations, causes of action, and/or legal theories alleged or asserted by the plaintiff implicate the individual's role or status as a director.

The legislative purpose behind section 2-418 supports this interpretation. The General Assembly intended to provide "appropriate protection for directors and officers which is of key importance in view of the increased number of suits, increased cost of litigation, and desire on the part of many companies to broaden management to include persons representing a variety of points of view." *Kramer*, 408 Md. at 22 (quoting Bill File on S.B. 756, 1981 Leg., Reg. Sess. (Md. 1981)). This framework works in tandem with CA § 2-405.1, which establishes the standard of care for directors and the duties owed by them. *Eastland Food Corp. v. Mekhaya*, 486 Md. 1, 22-25 (2023). For example, a director whose actions comport with the standards imposed by CA § 2-405.1 would not be exposed to liability for such actions, and CA § 2-418(d) ensures that the corporation will ultimately bear the expenses incurred by the director who successfully defends a lawsuit based on such actions. MODEL BUS. CORP. ACT ch. 8, subch. E, introductory cmt. (updated through

11

April 5, 2024); *Kramer*, 408 Md. at 22-23 (confirming that section 2-418 is based on the Model Business Corporation Act).

E

Applying the foregoing principles here, we conclude that Mr. Shapiro is entitled to indemnification under subsection 2-418(d). As noted, Hyperheal's amended complaint asserted two causes of action against Mr. Shapiro—intentional misrepresentation (Count I) and indemnification (Count IV). In the factual allegations that precede and are incorporated by reference in Count I, Hyperheal alleged that

> [a]s a director, Shapiro owed a duty of loyalty to Hyperheal and a duty to not engage in any act or omission that was not in good faith, involved intentional misconduct, conduct he had reasonable cause to believe was unlawful, or any transaction from which he would derive any improper personal benefit.

Hyperheal further alleged that "[a]s a shareholder and director that controlled the day-to-day operations of Hyperheal, Shapiro knew that Tricare paid Hyperheal for the unattended HBOT sessions and he also knew that Hyperheal paid . . . a 7.5% commission from the Tricare payments."

In Count I, Hyperheal invoked Mr. Shapiro's role as a director to satisfy the reasonable reliance element of fraudulent misrepresentation, *see Swinson v. Lords Landing Vill. Condo.*, 360 Md. 462, 476 (2000): "Hyperheal's reliance on Shapiro's actions was justified because he was a founder, shareholder, director, and owed fiduciary duties to Hyperheal, and it had no knowledge Shapiro was engaging in acts outside his employment and in breach of his fiduciary duties." These allegations connect Mr. Shapiro's role as a director to Hyperheal's theory of liability.

12

The complaint was not Hyperheal's only filing in the underlying case in which it invoked Mr. Shapiro's role as a director. For example, in its motion for summary judgment, Hyperheal argued that it was entitled to non-contractual indemnity (or implied indemnity) from Mr. Shapiro. Relying on *Pulte Home Corp. v. Parex, Inc.*, 403 Md. 367, 382-83 (2008), Hyperheal explained that under Maryland law, the right to indemnification under an implied indemnity theory exists when there is a "special relationship between the parties." Pointing to Mr. Shapiro's status as a director, Hyperheal argued that Mr. Shapiro's role as a director helped create the requisite special relationship:

> Under implied indemnity in fact, no legal or factual dispute exists that Shapiro owed a fiduciary duty to Hyperheal as its majority owner, an officer, director, in control of day-to-day operations and an employee. Moreover, Hyperheal's amended charter provided for indemnity for malfeasance where "such director's or officer's action, or failure to act, was (a) the result of active and deliberate dishonesty, or (b) intentionally wrongful, willful or malicious and, in each such case, was material to the cause of action adjudicated in the proceeding." Accordingly, there can be no legitimate dispute that Shapiro and Hyperheal were in a "special relationship" triggering implied indemnity in fact entitling Hyperheal to recover its losses arising from Shapiro's fraud.

(Citation modified).

Hyperheal's attempt to capitalize on Mr. Shapiro's status as a director continued at trial. Without objection, the court instructed the jury that: "An officer and director of a corporation occupies a fiduciary relationship as regards to that corporation that requires a disclosure in order to avoid any breach of trust."[5] And then during closing argument, Hyperheal built upon the theme of non-disclosure:

---

[5] Whether this instruction correctly states Maryland law on the scope of a director's duty is not before us.

There's no question that these treatments would not have occurred had he told everybody the true circumstances. Had he made sure that there was a doctor, he never would have been able to bill TriCare. Had he told his investors, had he told the company that, in fact, he had made sure that everything was handled appropriately, he would not have been able to continue the service because they would have stopped it.

In short, as did the Appellate Court, we have no difficulty finding that the factual allegations and legal theories on which Hyperheal predicated its claims against Mr. Shapiro implicated his role and status as a director. The jury's verdict in Mr. Shapiro's favor on all counts demonstrates his complete success in defending against these allegations. That success, combined with Hyperheal's effort to hold Mr. Shapiro liable based at least in part on his role and status as a director, entitled him to indemnification under CA § 2-418(d)(1).

Hyperheal contends that we should not focus on its allegations of fiduciary duty breaches in the complaint and should instead examine Mr. Shapiro's actual conduct that formed the basis of the lawsuit, all of which, Hyperheal insists, was committed as an employee. Hyperheal emphasizes that it alleged Mr. Shapiro owed fiduciary duties in his capacity as an employee, thus, its allegations of fiduciary duty breaches alone do not establish that Mr. Shapiro was sued in his capacity as a director. We disagree.

For starters, while an employee owes a duty of loyalty to his employer, the essence of that duty is that the employee must not allow his personal interests to conflict with those of his employer without full and fair disclosure. *Md. Credit Fin. Corp. v. Hagerty*, 216 Md. 83, 90 (1958). Here, however, there was no dispute that Mr. Shapiro's alleged misconduct was undertaken to increase Hyperheal's revenues and profits—Hyperheal did not allege that Mr. Shapiro secretly profited from his efforts. So, although it referred to Mr. Shapiro's

14

duties as an employee, Hyperheal alleged a broad, unspecified duty of disclosure that derived, at least in part, from what Hyperheal *believed* were duties owed by directors.[6] Painting with a broad brush gave the jury a basis to find that Mr. Shapiro breached his duties without having to determine the specific capacity in which he did so. This strategic choice came with the risk—now realized—that an adverse outcome would trigger Mr. Shapiro's indemnification right under section 2-418.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

---

[6] As noted in *Eastland*, CA § 2-405.1 is the sole source of duties imposed on directors. 486 Md. at 25. Thus, to the extent Mr. Shapiro owed a duty of disclosure as a director, it came from that section. Whether Hyperheal correctly articulated the duties of directors is not before us.